900 So.2d 336 (2005)
Rosalind FURLOW, individually and on behalf of the Estate of Hazel White, Deceased, Plaintiff-Appellant,
v.
WOODLAWN MANOR, INC. d/b/a The Oaks, Defendant-Appellee.
No. 39,485-CA.
Court of Appeal of Louisiana, Second Circuit.
April 20, 2005.
*337 Nix, Patterson & Roach, L.L.P. by Kimberly Anne Ramsey, Anthony Kyle Bruster, for Appellant.
Provosty, Sadler, deLaunay, Fiorenza & Sobel by David Richard Sobel, Jeremy Chase Cedars, Alexandria, for Appellee.
Before WILLIAMS, PEATROSS and DREW, JJ.
DREW, J.
Rosalind Furlow, individually and on behalf of the estate of Hazel White, appealed the judgment granting the defendant nursing home's exception of prematurity and dismissing her action for damages arising out of alleged violations of the Nursing Home Residents Bill of Rights Act ("NHRBRA"). For the reasons set forth below and in conformity with this court's recent opinions,[1] the judgment is reversed in part and the matter remanded to the trial court for further proceedings.

FACTS
Alleging violations of the NHRBRA,[2] Furlow, on February 22, 2004, sued Woodlawn Manor, Inc., d/b/a The Oaks, seeking damages for injuries to her deceased mother, Hazel White, a double amputee confined to a wheelchair. According to the petition, Ms. White was admitted into The Oaks in February of 2003 and remained there through July of 2003.[3] While Ms. White was in residence, The Oaks was allegedly understaffed, resulting in the neglect of its patients. Furlow alleged that The Oaks was negligent by allowing Ms. White to lie for hours in soiled bed linens, failing to turn her to prevent the development of pressure sores, and letting her suffer injury-causing falls (presumably from her wheelchair). These negligent acts and omissions allegedly contributed to Ms. White's death.
At about the same time, Furlow forwarded to the Commissioner of Administration for the State of Louisiana a request *338 for the formation of a medical review panel to evaluate the professional services and health care provided to Ms. White. Specifically, Furlow alleged that The Oaks failed:
 to properly assess and reassess Ms. White in her capacity as a patient;
 to develop and modify a plan of care to meet her changing needs; and
 to render proper professional services and health care treatment to prevent dehydration and pressure sores.
On April 14, 2004, The Oaks filed an exception of prematurity to the action filed in district court, and in the alternative, an exception of vagueness. The Oaks argued that the allegations in plaintiff's petition constituted medical malpractice. Because The Oaks was a qualified health care provider, defendant maintained that Furlow had to present her claims to a medical review panel prior to filing suit in district court as required by the Louisiana Medical Malpractice Act ("MMA"), La. R.S. 40:1299.41, et seq.
Asserting the negligence was not related to medical treatment but to custodial care, Furlow argued that the failure to turn Ms. White in her bed on a regular basis, to cleanse her of her own waste, and to ensure that she did not fall from her wheelchair was not related to medical treatment, but was the type of negligence for which the NHRBRA provided a cause of action separate and distinct from the remedies available through the MMA.
After hearing arguments on July 6, 2004, the trial court granted the exception of prematurity, finding that the allegations were subject to review by a medical review panel before being litigated in the district court. A written judgment granting the exception and dismissing the plaintiff's action was signed on July 27, 2004.

LAW
Plaintiff brought this action under the NHRBRA, which was enacted "to preserve the dignity and personal integrity of residents of nursing homes through the recognition and declaration of rights safeguarding against encroachments upon nursing home residents' right to self-determination." La. R.S. 40:2010.6. The NHRBRA requires nursing homes to treat their residents in accordance with certain enumerated rights, including but not limited to the right to be treated with dignity and to be free from mental and physical abuse. La. R.S. 40:2010.8(A)(9) and (10). The amended version of La. R.S. 40:2010.9 provides that any resident whose rights under the NHRBRA have been violated may assert a cause of action for injunctive relief, but limits recovery to attorney fees and costs.
Prior to its amendment by Acts 2003, No. 506, § 1, La. R.S. 40:2010.9 expressly allowed the recovery of actual damages for violations of the act. Absent express legislative intent to the contrary, substantive laws apply prospectively only, while procedural and interpretative laws apply both prospectively and retroactively. La. C.C. art. 6. In determining whether retroactive or prospective application is to be given to a newly-enacted provision where no legislative intent has been expressed, the enactment must be classified as either substantive, procedural, or interpretive. Keith v. U.S. Fidelity & Guar. Co., 96-2075 (La.5/9/97), 694 So.2d 180.
Substantive laws either establish new rules, rights, and duties or change existing ones. Keith v. U.S. Fidelity, supra. La. R.S. 40:2010.9 provided for the recovery of damages for violations of the NHRBRA. The 2003 amendment effective August 15, 2003, eliminated the recovery of damages. Accordingly, this amendment limiting a plaintiff to injunctive relief, *339 attorney fees and costs is substantive in nature. Because the alleged facts in the plaintiff's petition all occurred between February 2003 through June 2003, prior to the effective date of the amendment, any violations are governed by the pre-amendment version of La. R.S. 40:2010.9 allowing for the recovery of damages.
Under the MMA, all medical malpractice claims against a qualified health care provider must first be submitted to a medical review panel for consideration. The dilatory exception raising the objection of prematurity is the proper procedural mechanism for a qualified health care provider to invoke when a medical malpractice plaintiff has failed to submit the claim to a medical review panel before filing suit against the provider. Whether the lawsuit is premature is to be determined by the facts existing at the time the lawsuit is filed, and the burden of proving prematurity is on the exceptor. Therefore, in this case, The Oaks had the burden to establish the action was premature, entitling it to a medical review panel. Williamson v. Hospital Service District No. 1 of Jefferson, XXXX-XXXX (La.12/01/04), 888 So.2d 782.
"Malpractice" for purposes of the MMA is defined in pertinent part as:
[A]ny unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient.
La. R.S. 40:1299.41(A)(8).
Whether or not the conduct alleged by plaintiff is subject to the administrative remedy requirements of the MMA depends on whether Ms. White was a "patient" and whether the alleged negligence arose out of health care or professional services rendered or that should have been rendered. The MMA defines "health care" as "any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment or confinement." La. R.S. 40:1299.41(A)(9). It defines a patient as "a natural person who receives or should have received health care from a licensed health care provider, under a contract express or implied." La. R.S. 1299.41(A)(3).
In Coleman v. Deno, XXXX-XXXX, XXXX-XXXX, XXXX-XXXX (La.1/25/02), 813 So.2d 303, the Louisiana Supreme Court set out the six-factor test for determining whether alleged negligent conduct by a qualified health care provider constitutes "malpractice." The factors to be considered when evaluating the evidence include:
(1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill;
(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;
(3) whether the pertinent act or omission involved assessment of the patient's condition;
(4) whether the incident occurred in the context of a physician-patient relationship, or was within the scope of activities that a hospital is licensed to perform;

*340 (5) whether the injury would have occurred if the patient had not sought treatment; and
(6) whether the tort alleged was intentional.
In order to constitute medical malpractice, the act or omission by a nursing home complained of must be related to medical treatment; i.e., connected to medical treatment which plaintiff was or should have been receiving during her confinement. Richard v. Louisiana Extended Care Centers, Inc., 02-0978 (La.1/14/03), 835 So.2d 460.

DISCUSSION
Plaintiff appealed only that portion of the trial court's judgment which granted the exception of prematurity to the claims that defendant violated the NHRBRA by allowing Ms. White to lie in her own waste for extended period of times.[4] In plaintiff's view, the conduct of the nursing home was clearly a violation of Ms. White's right to be treated with dignity and to be free from mental and physical abuse; moreover, the conduct was not related to any medical treatment. Applying the Coleman, supra, factors, we find that the alleged acts in not properly keeping Ms. White clean are not covered under the MMA.
The first determination is whether the alleged negligence is "treatment related" or caused by a dereliction of professional skill. The Oaks had the burden to show that the responsibility, and thus failure, to clean Ms. White arose out of any particular condition for which she was receiving treatment at the nursing home. The record is devoid of any such evidence. The obligation to keep Ms. White clean and to change her soiled linens arose out of the nursing home's obligation to provide her around-the-clock custodial care. In Henry v. West Monroe Guest House, supra, this court specifically held that changing an adult diaper is not medical treatment.
Second, this alleged negligence does not require expert medical evidence to determine whether the standard of care was breached. The requirement to preserve the human dignity of a nursing home resident by keeping her clean of her own waste is not a matter on which physicians can speak with any more authority than a lay person.
Third, no medical assessment is necessary to conclude that a double amputee who has soiled her bed should be cleaned and her bed linens changed. Fourth, the alleged negligence was not related to a physician-patient relationship. Changing adult diapers and changing soiled linen is performed by aides without medical supervision. Keeping a patient clean is part of the around-the-clock custodial care for which The Oaks' services were engaged.
Fifth, because the obligation to clean Ms. White did not arise from any medical treatment she sought, we need not address whether the harm would have occurred if she had not sought any such treatment. Obviously, the decedent's dignity was impaired by having soiled diapers and linens regardless of her place of residence. Ms. White was owed cleaning as custodial care, not medical treatment. We find the last Coleman factor is inapplicable.

CONCLUSION
For the reasons stated above, we reverse in part the ruling of the trial court granting the exception of prematurity filed *341 by the defendant, Woodlawn Manor, Inc., d/b/a The Oaks, on the issue of whether defendant violated the provisions of the NHRBRA by failing to keep Hazel White clean of her own waste. The granting of the exception is affirmed as to all other claims. The case is remanded to the trial court for further proceedings. All costs of this appeal are assessed to the defendant.

DECREE
AFFIRMED IN PART, REVERSED IN PART, REMANDED.
NOTES
[1] See Henry v. West Monroe Guest House, Inc., 39,442 (La.App.2d Cir.3/2/05), 895 So.2d 680, and Burks v. Christus Health Monroe (La.App.2d Cir.4/6/05), 889 So.2d 775, 2005 WL 767008.
[2] La. R.S. 40:2010, et seq.
[3] While the petition alleges in paragraph 2 that Ms. White was a resident at The Oaks from December of 2002 until July of 2003, the petition later alleges that she was not admitted to The Oaks until February of 2003. This latter allegation is supported by the remainder of the record as the actual time of admission. Subsequent pleadings also suggest that Ms. White died on June 30, 2003, which, if true, would make it impossible for her to have been at The Oaks through July of 2003 as alleged in the petition.
[4] In Henry v. West Monroe, supra, causation of decubitus ulcers was noted to be part of the medical malpractice claim. In Richard v. Louisiana Extended Care, supra, letting a nursing home resident negligently fall from a wheelchair was found to be covered by the MMA.