928 So.2d 549 (2006)
Louvenia DAVIS, Individually and on Behalf of the Estate of Margaret Allen, Deceased
v.
ST. FRANCISVILLE COUNTRY MANOR, LLC.
No. 2005 CA 0072.
Court of Appeal of Louisiana, First Circuit.
February 10, 2006.
*551 Kimberly A. Ramsey, Shreveport, for Plaintiff/Appellant, Louvenia Davis, Individually and on Behalf of the Estate of Margaret Allen.
Joel E. Gooch, Lafayette, for Defendant/Appellee, St. Francisville Country Manor, LLC.
Before: WHIPPLE, McCLENDON and WELCH, JJ.
WHIPPLE, J.
Plaintiff appeals the judgment of the trial court granting in part defendant nursing home's exception of no cause of action, granting defendant's exception of prematurity and dismissing plaintiff's action for damages arising out of alleged violations of the Nursing Home Residents Bill of Rights Act ("NHRBRA"), LSA-R.S. 40:2010.6 et seq. For the following reasons, we reverse in part and remand for further proceedings.

FACTS AND PROCEDURAL HISTORY
Alleging violations of the NHRBRA, on May 17, 2004, plaintiff, Louvenia Davis, individually and on behalf of the estate of Margaret Allen, sued St. Francisville Country Manor, LLC, seeking damages for injuries to her deceased mother, Ms. Allen. According to the petition, Ms. Allen was admitted to St. Francisville Country Manor in April 2003 and remained a resident there until her death in December 2003.[1] While Ms. Allen was in residence, St. Francisville Country Manor was allegedly understaffed, resulting in the neglect of its patients.
Specifically, Davis alleged that St. Francisville Country Manor was negligent by leaving Ms. Allen to lie in her own urine and waste for extended periods of time without being cleaned; by failing to provide adequate custodial turning and repositioning *552 of Ms. Allen, resulting in the development and worsening of pressure sores; by failing to sufficiently feed Ms. Allen to prevent malnutrition; by failing to ensure that Ms. Allen received adequate fluids to prevent dehydration; by failing to provide sufficient staff to ensure that Ms. Allen's custodial care needs were met; and by failing to treat Ms. Allen courteously, fairly and with the fullest measure of dignity. According to the petition, as a result of these acts of negligence, Ms. Allen suffered injuries including physical pain and suffering, mental anguish, disability, loss of enjoyment of life, humiliation and emotional distress.
Shortly before instituting the instant suit, Davis also filed with the Commissioner of Administration a request for the formation of a medical review panel, to evaluate the professional services and health care provided to Ms. Allen while she was a resident of St. Francisville Country Manor. In the request, Davis specifically alleged that St. Francisville Country Manor failed to meet the applicable standard of care in rendering services and health care to Ms. Allen by: (1) failing to properly assess her as a patient and to develop a care plan to meet her needs; (2) failing to properly reassess Ms. Allen and to modify her care plan as significant changes in her physical condition occurred; (3) failing to properly notify Ms. Allen's family and treating physician of significant changes in her physical condition and needs and failing to timely intervene to meet those needs; and (4) failing to render professional services and health care to Ms. Allen with respect to the treatment of her skin tears, pressure sores, dehydration and malnutrition.
In response to the petition filed in the trial court below, St. Francisville Country Manor filed a dilatory exception of prematurity and a peremptory exception of no cause of action. With regard to the exception of prematurity, it argued that because it was a qualified health care provider and because the petition alleged medical malpractice, Davis had to present her claims to a medical review panel in accordance with the Louisiana Medical Malpractice Act ("MMA"), LSA-R.S. 40:1299.47(A)(1), prior to filing suit in district court.
With regard to the exception of no cause of action, St. Francisville Country Manor contended first that the petition failed to state a cause of action because it lacked sufficient factual allegations to give rise to any cognizable legal redress. Additionally, it argued that LSA-R.S. 40:2010.8(D)(1) and 2010.9(A) and (B) of the NHRBRA had been amended by Acts 2003, No. 506 to remove the right to recover money damages as a method of enforcing the rights set forth in the NHRBRA, an amendment which it alleged was procedural and thus retroactive. Therefore, St. Francisville Country Manor contended that, even if the petition did set forth sufficient factual allegations, Davis nonetheless failed to state a cause of action under the NHRBRA for the type of legal redress she sought, i.e., money damages.
Davis countered that St. Francisville Country Manor's negligence was not related to medical treatment, but to custodial care, bringing it within the realm of the NHRBRA rather than the MMA. Davis further asserted that the injuries sustained by Ms. Allen as a nursing home resident gave rise to a distinct cause of action under the NHRBRA due to St. Francisville Country Manor's violations of Ms. Allen's rights as specifically set forth in the NHRBRA. Additionally, with regard to the amendment to LSA-R.S. 40:2010.9 of the NHRBRA, Davis contended that the amendment eliminating the recovery of actual damages was substantive and should not be applied retroactively prior to its *553 August 15, 2003 effective date to deprive her of her vested right to a cause of action for money damages. Additionally, with regard to her claim for money damages for injuries Ms. Allen suffered after the effective date of the amendment, Davis argued that this claim was for damages due to the nursing home's negligence, rather than medical malpractice, and, accordingly, that she was entitled to assert that claim pursuant to LSA-C.C. art. 2315.
Following a hearing on the exceptions, the trial court maintained in part the exception of no cause of action, finding that Davis failed to state a claim for money damages pursuant to LSA-R.S. 40:2010.9. This ruling was based upon the trial court's specific finding that the 2003 amendment to LSA-R.S. 40:2010.9, eliminating the right to recover money damages for an NHRBRA violation, was procedural in nature and, thus, applied retroactively to deprive Davis of the money damages claim under the NHRBRA. The trial court further maintained the exception of prematurity, finding that the allegations of wrongdoing in the petition constituted allegations of medical malpractice, thus requiring Davis to first submit her claim to a medical review panel. Accordingly, the trial court dismissed Davis' claims, which it deemed to be covered by the MMA, without prejudice.
From this judgment, Davis appeals, specifically challenging: (1) the trial court's finding that leaving a nursing home resident to lie for extended periods of time on a daily basis in her own feces and urine constitutes medical malpractice rather than a violation of the NHRBRA and, thus, maintaining the exception of prematurity; and (2) the trial court's finding that the 2003 amendment to LSA-R.S. 40:2010.9 was procedural and, thus, retroactive and, consequently, that Davis had failed to state a cause of action for monetary damages.

OVERVIEW OF THE NHRBRA
The NHRBRA, LSA-R.S. 40:2010.6 et seq., was enacted in 1985 and was based on the legislature's finding that persons residing in nursing homes are isolated from the community and often lack the means to assert their rights as individual citizens. Short v. Plantation Management Corporation, 99-0899, p. 6 (La.App. 1st Cir.12/27/00), 781 So.2d 46, 52. As the Louisiana Supreme Court has held, the legislature did not intend for the NHRBRA to repeal, supplant or replace the MMA's application to medical malpractice claims against nursing homes. Rather, the NHRBRA contemplates matters far beyond the scope of the MMA. Specifically, the NHRBRA addresses twenty-two different rights of nursing home residents, of which, the Louisiana Supreme Court has held, twenty-one could never be characterized as "malpractice."[2]Richard v. Louisiana Extended Care Centers, Inc., XXXX-XXXX, p. 10 (La.1/14/03), 835 So.2d 460, 467. Included among those rights, and at issue herein as alleged in the petition, are the right to privacy in treatment and in caring for personal needs; the right to be treated courteously, fairly and with the fullest measure of dignity; the right to be free from mental and physical abuse; and the right to rise and retire in accordance with the resident's reasonable requests. *554 LSA-R.S. 40:2010.8(A)(8), (9), (10) & (21).
In order to better enable residents to find legal representation, the legislature initially provided that a claimant who successfully proved a violation of one of the rights set forth in the NHRBRA was entitled to attorney's fees in addition to costs and damages. LSA-R.S. 40:2010.9 (prior to amendment by Acts 2003, No. 506); Richard, XXXX-XXXX, at p. 10, 835 So.2d at 467; Short, 99-0899 at pp. 6-7, 781 So.2d at 53. However, in 2003, the legislature amended LSA-R.S. 40:2010.9 to eliminate the provision in the statute that provided for the recovery of "actual damages" and to provide instead that a resident could assert a cause of action for "injunctive relief." Acts 2003, No. 506, § 1.

TRIAL COURT'S RULING ON EXCEPTION OF NO CAUSE OF ACTION

(Assignment of Error No. 2)
In this assignment of error, Davis avers that the trial court erred in maintaining in part the exception of no cause of action and dismissing her claim for monetary damages under the NHRBRA. The function of the exception of no cause of action challenges the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading. Perere v. Louisiana Television Broadcasting Corporation, 97-2873, p. 3 (La.App. 1st Cir.11/6/98), 721 So.2d 1075, 1077. No evidence may be introduced to support or controvert the objection. LSA-C.C.P. art. 931. A court must review the petition and accept all well-pleaded facts as true, and the only issue on the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. Cage v. Adoption Options of Louisiana, Inc., 94-2173 (La.App. 1st Cir.6/23/95), 657 So.2d 670, 671.
In finding that Davis had failed to set forth a cause of action for monetary damages for the alleged negligent acts of St. Francisville Country Manor under the NHRBRA, the trial court specifically relied upon its finding that the 2003 amendment to LSA-R.S. 40:2010.9 eliminating the right to recovery actual damages was procedural and, thus, retroactive. For the following reasons, we conclude that the trial court legally erred in reaching this conclusion.
The legislature is free, within constitutional confines, to give its enactments retroactive effect. Morial v. Smith & Wesson Corporation, XXXX-XXXX, p. 8 (La.4/3/01), 785 So.2d 1, 9, cert. denied, 534 U.S. 951, 122 S.Ct. 346, 151 L.Ed.2d 262 (2001). A court must defer to the legislature's intent when determining whether a statute should be applied retroactively. LSA-C.C. art. 6; Morial, XXXX-XXXX at p. 8, 785 So.2d at 9. Louisiana Civil Code article 6 provides that "[i]n the absence of contrary legislative expression, substantive laws apply prospectively" and that "[p]rocedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary."
Article 6 requires a two-fold inquiry. First, we must ascertain whether in the enactment, the legislature expressed its intent regarding retroactive or prospective application. If the legislature did not express its intent, we must classify the enactment as substantive, procedural or interpretive. Morial, XXXX-XXXX at p. 9, 785 So.2d at 10. Furthermore, even where the legislature has expressed its intent to give a law retroactive effect, the law may not be applied retroactively if doing so would impair contractual obligations or disturb vested rights in violation of the Contract and Due Process Clauses of the *555 Federal and State Constitutions. U.S. Const. art. I, § 10; U.S. Const. amend. XIV, § 1; La. Const. art. I, §§ 2, 23. If it does so, then in spite of legislative pronouncements to the contrary, the law is substantive, rather than procedural or interpretive. State Farm Mutual Automobile Insurance Company v. Noyes, XXXX-XXXX, p. 7 (La.App. 1st Cir.2/23/04), 872 So.2d 1133, 1138.
In the instant case, examining the language of Act 506 itself reveals that the legislature did not specifically express any intent regarding retroactive application. Thus, the enactment must be classified as substantive, procedural or interpretive. State Farm Mutual Automobile Insurance Company, XXXX-XXXX, at p. 7, 872 So.2d at 1138. While the trial court, in giving the amendment retroactive effect and, thus, maintaining the exception of no cause of action, determined that the amendment was procedural, in that it merely determined the procedure available to plaintiff to enforce the rights set forth in the NHRBRA, Davis, on the other hand, contends that the amendment was substantive in that it eliminated a cause of action under the NHRBRA for monetary damages.
Substantive laws either establish new rules, rights and duties or change existing ones. State Farm Mutual Automobile Insurance Company, XXXX-XXXX, at p. 8, 872 So.2d at 1139. Procedural laws, on the other hand, describe methods for enforcing, processing, administering or determining rights, liabilities or status. State, Department of Transportation and Development v. Hellenic, Inc., 93-0870 (La.App. 1st Cir.4/8/94), 636 So.2d 1004, 1009, writ denied, 94-1637 (La.10/7/94), 644 So.2d 635.
With regard to the trial court's holding that the amendment at issue was procedural, we note that a cause of action for money damages, which accrues at the time of injury, is a vested property right protected by the guarantee of due process. See Bourgeois v. Wiley, XXXX-XXXX, p. 9 (La.App. 1st Cir.5/9/03), 849 So.2d 632, 638; see also Ginn v. Woman's Hospital Foundation, Inc., 99-1691, p. 6 (La.App. 1st Cir.9/22/00), 770 So.2d 428, 432, writ denied, XXXX-XXXX (La.2/2/01), 784 So.2d 647. Once a party's cause of action accrues, it becomes a vested property right that may not constitutionally be divested. Thus, statutes enacted after the acquisition of such a vested property right cannot be retroactively applied so as to divest the plaintiff of his vested right in the cause of action, because such a retroactive application would contravene the due process guarantees. Adams v. Owens-Corning Fiberglas Corporation, XXXX-XXXX, p. 3 (La.App. 1st Cir.9/23/05), 921 So.2d 972, 976; Cheron v. LCS Corrections Services, Inc., XXXX-XXXX, p. 13 (La.App. 1st Cir.2/23/04), 872 So.2d 1094, 1102, aff'd, XXXX-XXXX (La.1/19/05), 891 So.2d 1250. Accordingly, we conclude, as have our colleagues on the Second Circuit Court of Appeal, that the 2003 amendment to LSA-R.S. 40:2010.9 that eliminated the right to bring a cause of action under the NHRBRA for actual monetary damages cannot be applied retroactively to divest Davis of her vested property right. See Furlow v. Woodlawn Manor, Inc., 39,485, pp. 3-4 (La.App. 2nd Cir.4/20/05), 900 So.2d 336, 338-339, writ denied, XXXX-XXXX (La.12/9/05), 916 So.2d 1064, Burks v. Christus Health Monroe, 39,540, pp. 3-4 (La.App. 2nd Cir.4/6/05), 899 So.2d 775, 778, writ denied, XXXX-XXXX (La.11/28/05), 916 So.2d 146 and Henry v. West Monroe Guest House, Inc., 39,442 (La.App. 2nd Cir.3/2/05), 895 So.2d 680, 682 n. 1 (wherein the Second Circuit held that the amendment to LSA-R.S. 40:2010.9 by Acts 2003, *556 No. 506, § 1 was substantive in nature and could not be applied retroactively).
Additionally, the trial court's finding that Davis failed to set forth a cause of action for monetary damages ignores her rights to pursue a negligence action pursuant to LSA-C.C. art. 2315 for acts of negligence occurring either prior to or after the effective date of the 2003 amendment to the NHRBRA. In her petition, Davis alleged that due to the negligence of St. Francisville Country Manor (specifically in allowing Allen to lie in her own waste for extended periods without being cleaned), Ms. Allen incurred medical expenses and sustained physical pain and suffering, mental anguish, disability, loss of enjoyment of life, humiliation and emotional distress. As this court has previously recognized, such allegations set forth a delictual cause of action founded upon negligence and a concurrent cause of action under the NHRBRA. See LSA-R.S. 40:2010.9(B) (providing that the remedies provided under the NHRBRA shall not be construed to restrict other legal and administrative remedies available to the resident, but rather, are in addition to such other remedies); McKnight v. D & W Health Services, Inc., 2002-2552, p. 4 (La.App. 1st Cir.11/7/03), 873 So.2d 18, 21.
Thus, Davis could pursue a claim for monetary damages for violations of the NHRBRA occurring prior to the effective date of the 2003 amendment to LSA-R.S. 40:2010.9, which claim would be governed by the provisions of the NHRBRA prior to amendment. Moreover, with regard to alleged acts of negligence occurring after the August 15, 2003 effective date of the amendment, Davis would nonetheless be entitled to pursue her claim for monetary damages for such negligence under general principles of tort law.[3]
Accordingly, the portion of the trial court's judgment maintaining St. Francisville Country Manor's exception of no cause of action on the basis that Davis failed to state a cause of action for monetary damages under the NHRBRA is reversed to the extent that the judgment denied her claim for violations of the NHRBRA occurring prior to August 15, 2003. Nonetheless, the remaining question we must address is whether the trial court correctly ruled that Davis's claims for monetary damages based upon alleged negligence and violations of the NHRBRA are in fact based upon "medical malpractice," so as to justify maintaining St. Francisville Country Manor's exception of prematurity. See McKnight, 2002-2552 at p. 4, 873 So.2d at 21.

TRIAL COURT'S RULING ON THE EXCEPTION OF PREMATURITY

(Assignment of Error No. 1)
In this assignment of error, Davis challenges the trial court's ruling that the claims she asserted were in fact claims of medical malpractice and, thus, that she was required to present these claims to a medical review panel prior to filing suit in district court.
Under the MMA, all medical malpractice claims against a qualified health care provider must first be submitted to a medical review panel for consideration. LSA-R.S. 40:1299.47. The dilatory exception of prematurity is the proper procedural vehicle invoked by a qualified health care provider sued by a plaintiff *557 who has not submitted a medical malpractice claim to a medical review panel prior to filing suit against the provider. McKnight, 2002-2552 at p. 3, 873 So.2d at 20. Accordingly, a claim against a private qualified health care provider is subject to dismissal on a timely filed exception of prematurity if such claim has not first been screened by a pre-suit medical review panel. Spradlin v. Acadia-St. Landry Medical Foundation, 98-1977, p. 4 (La.2/29/00), 758 So.2d 116, 119.
Whether the conduct alleged by Davis is subject to the review requirements of the MMA depends upon whether the alleged negligence arose out of the rendition of, or failure to render, health care to Ms. Allen. "Health care" is defined in the MMA as "any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment or confinement." LSA-R.S. 40:1299.41(A)(9)(emphasis added).
In Richard, XXXX-XXXX, at p. 12, 835 So.2d at 468, the Louisiana Supreme Court noted that the nursing home resident is not always receiving medical care or treatment for any specific condition, but can always be said to be "confined" to the nursing home. Nonetheless, the Court stated, in its view, the legislature did not intend to have every act by any health care provider during the patient's confinement in a nursing home covered by the MMA. Richard, XXXX-XXXX, at p. 12, 895 So.2d at 468. Thus, the Court concluded that not all negligent acts by a nursing home will constitute medical malpractice under the MMA and that, to constitute medical malpractice, the alleged negligent act must be related to the nursing home resident's medical treatment. Richard, XXXX-XXXX, at p. 14, 895 So.2d at 469.
In Coleman v. Deno, XXXX-XXXX, XXXX-XXXX, XXXX-XXXX, pp. 17-18 (La.1/25/02), 813 So.2d 303, 315-316, the Supreme Court set forth six factors to be considered in determining whether alleged negligent conduct by a qualified health care provider constitutes malpractice. The factors to be considered include: (1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill; (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached; (3) whether the pertinent act or omission involved assessment of the patient's condition; (4) whether the incident occurred in the context of a physician-patient relationship or was within the scope of activities that a hospital is licensed to perform; (5) whether the injury would have occurred if the patient had not sought treatment; and (6) whether the tort alleged was intentional. Coleman, XXXX-XXXX, XXXX-XXXX, XXXX-XXXX, 813 So.2d at 315-316.
Although Davis asserted several alleged negligent acts in her petition, on appeal, she limits her argument to the alleged failure of St. Francisville Country Manor to clean Ms. Allen on a regular basis, thereby requiring her to lie in her own bodily waste for extended periods on a regular basis. On appeal, Davis contends that these particular negligent acts do not constitute malpractice and, thus, are not governed by the MMA. Accordingly, we will limit our analysis to whether the alleged acts of negligence in failing to timely clean and change Ms. Allen on a regular, timely basis constitute medical malpractice.[4]See Furlow, 39,485 at p. 6, 900 So.2d at 340.
*558 Applying the Coleman factors set forth above, we conclude, as have the Second and Third Circuits in addressing this precise issue, that the trial court erred in finding that the alleged acts of failing to timely clean and change Ms. Allen on a regular basis constitute medical malpractice and, thus, were subject to the requirements of the MMA. See Quinney v. Summit of Alexandria, 2005-237, pp. 10-11 (La.App. 3rd Cir.6/1/05), 903 So.2d 1226, 1233-1234; Rogers v. Hickory Manor Nursing & Rehabilitation, L.L.C., 39,626, p. 5 (La.App. 2nd Cir.5/11/05), 902 So.2d 1150, 1153-1154; Womack v. Autumn Leaves Nursing & Rehabilitation Center, L.L.C., 39,710, p. 5 (La.App. 2nd Cir.5/11/05), 902 So.2d 1280, 1283; Furlow, 39,485 at pp. 7-8, 900 So.2d at 340; Burks, 39,540 at pp. 5-6, 899 So.2d at 779; and Henry, 39,442, 895 So.2d at 683. Regarding the first Coleman factor, determining when a diaper needs to be changed is not related to medical treatment. Secondly, this alleged negligence does not require expert medical evidence to determine whether the standard of care was breached. As noted by the Second Circuit, the requirement to preserve the human dignity of a nursing home resident by keeping her clean of her own waste is not a matter on which physicians can speak with any more authority than a lay person. Furlow, 39,485 at p. 7, 900 So.2d at 340. Third, a medical assessment of the resident's condition is not necessary to determine whether a resident who has soiled herself should be cleaned. Fourth, changing a diaper and keeping a resident clean is part of the custodial care of a nursing home and need not be performed under the direction of a physician. With regard to the fifth factor, we conclude that the obligation to clean Ms. Allen did not arise from any medical treatment she sought; thus, we need not address whether the alleged harm would have occurred if she had not sought any such treatment. See Furlow, 39,485 at p. 8, 900 So.2d at 340. Regarding the sixth factor, whether the action was intentional, the petition makes no such allegation.
Applying the above factors to the allegations herein, we conclude that Ms. Davis has asserted claims under the NHRBRA and LSA-C.C. art. 2315 of alleged negligence in failing to properly clean Ms. Allen of her own waste in a routine and timely manner, claims which do not require submission to a medical review panel. Accordingly, the portion of the judgment maintaining the exception of prematurity as it relates to these particular claims must be reversed. See Furlow, 39,485 at p. 8, 900 So.2d at 340-341; Burks, 39,540 at p. 6, 899 So.2d at 779; and Henry, 39,442, 895 So.2d at 683.

CONCLUSION
For the above and foregoing reasons, the portion of the November 3, 2004 judgment, maintaining the exception of no cause of action as to Ms. Davis' claim for damages under LSA-R.S. 40:2010.9 for acts of negligence occurring prior to August 15, 2003 is reversed. Additionally, we reverse in part the portion of the judgment maintaining the exception of prematurity on the issue of whether St. Francisville Country Manor violated the provisions of the NHRBRA or LSA-C.C. art. 2315 by failing to keep Margaret Allen clean of her own waste. The November 3, 2004 judgment *559 is affirmed in all other respects. This case is remanded for further proceedings. All costs of this appeal are assessed against defendant, St. Francisville Country Manor, LLC.
REVERSED IN PART; AFFIRMED IN PART; AND REMANDED.
NOTES
[1] According to the petition, Ms. Allen died on December 2, 2003.
[2] In stating that twenty-one of the twenty-two rights could never be characterized as malpractice, the Louisiana Supreme Court did not specifically state which right, if violated, would constitute malpractice. Richard v. Louisiana Extended Care Centers, Inc., XXXX-XXXX, p. 10 (La.1/14/03), 835 So.2d 460, 467. However, we note that LSA-R.S. 40:2010.8(A)(7) provides that nursing home residents have the "right to receive adequate and appropriate health care," a violation of which would seem to invoke the MMA.
[3] The clear benefit to being able to assert a claim for monetary damages under the NHRBRA prior to the 2003 amendment, rather than under general tort law principles, is the right to recover attorney's fees upon proving a violation of any of the rights set forth therein. See LSA-R.S. 40:2010.9(A).
[4] We note that the Second Circuit Court of Appeal has determined that claims relating to causation of decubitus ulcers, dehydration and malnutrition constitute medical malpractice claims that must be first presented to a medical review panel. See Henry, 39,442, 895 So.2d at 684; Burks, 39,540 at p. 6, 899 So.2d at 779. As stated above, Davis has pursued similar claims to those stated in Henry in a medical malpractice proceeding. Because these other claims are being pursued in another forum in the context of medical malpractice before a medical review panel, they are not involved in this appeal.