Judgment rendered November 15, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,264-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

| | |
|---|---|
| PAULA PATTERSON, JON CRUMPLER AND CAREY CRUMPLER, INDIVIDUALLY AND ON BEHALF OF THEIR MOTHER, ANITA CAREY, DECEASED | Plaintiffs-Appellants |

versus

| | |
|---|---|
| CLAIBORNE OPERATOR GROUP, L.L.C., AND PARAMOUNT HEALTHCARE CONSULTANTS, L.L.C., BOTH D/B/A CLAIBORNE REHABILITATION CENTER | Defendants-Appellees |

* * * * *

Appealed from the
Second Judicial District Court for the
Parish of Claiborne, Louisiana
Trial Court No. 42671

Honorable Walter E. May, Jr., Judge

* * * * *

| | |
|---|---|
| KOSMITIS BOND, APLC<br>By: Georgia Patricia Kosmitis | Counsel for Appellants |
| HUDSON, POTTS & BERNSTEIN, LLP<br>By: Gordon L. James<br>Donald H. Zeigler III<br>Sara G. White | Counsel for Appellees |

* * * * *

Before STEPHENS, HUNTER, and ELLENDER, JJ.

**STEPHENS, J.**

This is an appeal by plaintiffs in a medical malpractice action from the trial court's judgment granting a dilatory exception of prematurity filed by defendants and denying plaintiffs leave to amend their petition. For the reasons set forth below, we reverse the trial court's judgment in part.

## FACTS/PROCEDURAL BACKGROUND

Mrs. Anita Carey was admitted to Claiborne Rehabilitation Center ("CRC"), a nursing home/long term care rehabilitation center on May 21, 2021. While there, she is alleged to have sustained bed sores from not being kept clean, dry, turned, and fed. Mrs. Carey was admitted to the hospital on October 30, 2021. She was found to have an infected Stage IV pressure injury with inflammation, infection, dehydration to the point of acute renal failure and brain damage, malnutrition, and sepsis. Unable to recover from her injuries, Mrs. Carey died on December 12, 2021.

On May 3, 2022, plaintiffs, Paula Patterson, John Crumpler, and Carey Crumpler, Individually and on Behalf of Their Mother, Anita Carey ("Mrs. Carey") (collectively "plaintiffs"), filed a request to form a medical review panel to review the conduct of Claiborne Operator Group, L.L.C. and Paramount Healthcare Consultants, L.L.C., d/b/a Claiborne Rehabilitation Center ("CRC"), concerning care and treatment received by Mrs. Carey while in the nursing home/long term care facility. Two weeks later, plaintiffs filed a petition for damages in the Second Judicial District Court, seeking tort damages for acts not covered by the LMMA.

Plaintiffs have made, *inter alia*, allegations that CRC knowingly and intentionally accepted more residents than their staff could care for, and that this intentional failure to have a sufficient number of trained personnel to

provide the basic necessities of food, water, bathing, and hygiene caused Mrs. Carey to sustain damages, including the loss of dignity, loss of respect, and abuse. According to plaintiffs' petition, CRC knew they did not have sufficient personnel per resident yet they continued to accept residents knowing they were not able to meet their needs. It is plaintiffs' position that these "custodial claims" are not medical treatment and therefore fall outside of the LMMA. Plaintiffs also argue that CRC's knowledge that they were understaffed is an intentional decision not to provide adequate basic care, which constitutes intentional conduct as an utter disregard for their residents' rights.

CRC disputes all of plaintiffs' allegations. On June 8, 2022, CRC filed an exception of prematurity, claiming that they are members of the La. Patients' Compensation Fund, and **all** of plaintiffs' claims against them were premature and must first be presented to a medical review panel. Plaintiffs opposed the exception, arguing that while some of their claims fell under the LMMA, those raised in their petition filed in the district court should be analyzed independently. The trial court granted the exception of prematurity, finding that all of plaintiffs' claims should be "handled in the normal fashion." The trial court denied plaintiffs' request to amend their petition. This appeal was filed by plaintiffs.

## DISCUSSION

*Plaintiffs' Argument*

According to plaintiffs, an analysis of the *Coleman*[1] factors shows that not all of their allegations are medical malpractice.

---

[1] *Coleman v. Deno*, 01-1517, pp. 17-18 (La. 1/25/02), 813 So. 2d 303, 315-16.

2

(1) Providing food, water, hygiene, cleanliness, and assistance with turning and repositioning are not treatment related and injuries caused from the provision of these necessities do not result from the dereliction of any professional skill. Instead, these necessities are provided by unlicensed staff and are provided to all persons regardless of their medical condition;

(2) Medical evidence is not necessary to determine whether a patient is to be provided with these basic necessities or whether the failure to do so constitutes a breach of duty—all residents require the basic necessities of life;

(3) The omission or act of not providing water, food, hygiene, and bathing does not depend upon any assessment of the patient's condition; all residents require these basic necessities of life and are to be provided these things;

(4) These basics do not require a physician's order, but are to be routinely provided by nursing aides and are not required to be administered under the direction of a physician;

(5) Mrs. Carey would have suffered loss of dignity and harm from not being provided food, water, hygiene/bathing, and assistance regardless of her residence in the nursing home (and in fact, had she been at home, would have been a concern of Louisiana's elder protective services); and

(6) The tort of placing profits above people and knowing they did not have sufficient staff members per patient to provide the basic necessities of life is intentional conduct; CRC knew that harm would result to residents as they continued to accept patients regardless of having insufficient staff to provide the basic necessities; this excludes these particular claims from protection of the LMMA.

Applying the *Coleman* factors, Louisiana courts have found various acts of nursing home negligence to be outside of the LMMA, such as: failure to clean and turn the patient and allowing her to lie in her own waste; complaints arising from a failure to abide by the patient care plan; and, most recently, dignity type claims such as the ones in this case.

According to plaintiffs, they have explicitly alleged custodial negligence claims that this Court has previously found are not medical malpractice. Plaintiffs averred that CRC did not care for Mrs. Carey's

hygiene, but left her to sit in her own waste and develop E. Coli infections caused by her excrement coming in contact with her ulcer and urethra. Plaintiffs further contend that in their petition, they alleged that CRC failed to abide by Mrs. Carey's care plan by, *inter alia*, failing to reposition her, and by providing inadequate hydration and nutrition.

The trial court did not address these allegations distinctly and separately so as to resolve ambiguities in favor of plaintiffs. Instead, the lower court did the opposite—it broadly construed the LMMA to encompass all of plaintiffs' allegations as a whole, concluding that "all of the factors when you consider… *Coleman versus Deno* … what we're dealing with, here, is an effort to bootstrap this, uh, by making these allegations that really are, uh, of no … impact," before granting CRC's exception of prematurity. It is clear, urge plaintiffs, that the trial court rejected the law and concluded that they were attempting to circumvent the LMMA rather than reviewing the specific allegations of plaintiffs' petition to determine whether each one fell outside of the LMMA.

Because the trial court failed to assess whether there was any ambiguity or utilize the *Coleman* factors but instead lumped together all of plaintiffs' claims together as falling under the LMMA, the trial court erred.

Plaintiffs next urge that the trial court erred in stating that allegations of intentional conduct by health care providers would still fall under the LMMA. The trial court held that, regardless of CRC's state of mind, all malpractice actions fall under the LMMA. The court stated, "If by putting— by writing the words gross and intentional in your pleadings, that somehow gets it outside of medical malpractice, we won't have any more medical malpractice statutes." This reasoning suggests that intentional torts are

4

covered by the LMMA when in fact the opposite is true, and is an error of law.

Plaintiffs asserted in their brief that claims of gross negligence such as the ones they have made are clearly excluded from coverage of the LMMA, even against a defendant such as CRC, who is a private or non-governmental health care provider. While the LMMA explicitly excludes coverage for "any act or omission of gross negligence or any willful or wanton act or omission" in its section covering claims against public hospitals, La. R.S. 40:1237.1(A)(9)(cc), and there is no identical provision in that part of the LMMA covering private health care providers, plaintiffs point to *Williams v. State Dept. of Health and Hospitals*, 97-0555 (La. 12/2/97), 703 So. 2d 579, wherein the Louisiana Supreme Court observed that the LMMA "imparts to the governmental tortfeasor the same limitation of liability that is provided to the non-governmental tortfeasors who commit medical malpractice." *Williams*, p. 5, 703 So. 2d at 582.

However, at oral argument, plaintiffs abandoned this argument and instead claimed that CRC, a licensed facility, knew the consequences of failing to have sufficient staff and equipment to provide the basic custodial necessities of food and water—the residents would not receive the necessities and therefore suffer from indignities such as malnutrition and dehydration, *inter alia*. Plaintiffs urge that the trial court's interpretation of the LMMA to include such allegations of intentional conduct is wrong and should be reversed.

Finally, plaintiffs contend that the trial court erred in failing to allow them leave to amend their petition pursuant to La. C. C. P. art. 933(B). According to plaintiffs, they have alleged several claims that fall outside the

scope of the LMMA. They ask this Court to perform a *de novo* review, reverse the trial court's dismissal of all of their claims, and find that those claims sounding in custodial negligence and intentional tort are not premature as they do not fall under the LMMA. In the alternative, plaintiffs ask that this Court vacate the trial court's order and remand with instructions to separate out plaintiffs' claims sounding in malpractice from those that do not and reinstate plaintiffs' non-malpractice claims.

*Defendants' Argument*

CRC first asserts that plaintiffs' allegations consist of gross negligence, not intentional torts and therefore fall under the LMMA. CRC presented evidence that it was a qualified healthcare provider under La. R.S. 40:1231.8(B)(1)(a)(i) and that plaintiffs were required to submit all of their claims to review by a medical review panel. It is CRC's argument that plaintiffs have failed to establish that their claims are outside of the LMMA because the LMMA does not apply to allegations of gross negligence and willful misconduct. *See*, *McDowell v. Garden Court Healthcare, L.L.C.*, 54,645 (La. App. 2 Cir. 8/10/22), 345 So. 3d 506, *writ denied*, 22-01364 (La. 11/16/22), 345 So. 3d 506; *Morrow v. La. Medical Mutual Ins. Co.*, 22-1006 (La. App. 1 Cir. 2/24/23), 361 So. 3d 986; *Whitehead v. Christus Health Central La.*, 21-764 (La. App. 3 Cir. 6/8/22), 344 So. 3d 91; *Wesco v. Columbia Lakeland Medical Center*, 03-0328 (La. App. 4 Cir. 9/10/03), 862 So. 2d 997, *writ denied*, 04-0525 (La. 4/20/04), 872 So. 2d 490.

CRC next urges that the trial court correctly found that plaintiffs have alleged acts of medical malpractice, not acts of intentional tort, in their petition. Under the factors set forth in *Coleman*, a review of plaintiffs'

6

allegations against CRC shows that the claims clearly are medical

malpractice.

*Allegations Re: Consultations and Transfer of Patient*

(1) The decision as to whether to consult a healthcare provider to see a patient or transfer the patient to another facility is treatment related and an act of professional skill.

(2) Medical expert evidence is necessary to determine whether a consultation or transfer is necessary, and if so, what type of consultation or transfer is required.

(3) The decision to consult a healthcare provider or transfer a patient involves assessing the patient's condition.

(4) A consultation or transfer occurs in the context of a patient-healthcare provider relationship and involves an activity that CRC was licensed to perform.

(5) A consultation or transfer would not have occurred had Mrs. Carey not sought treatment with CRC.

(6) The decision to consult a healthcare provider or transfer Mrs. Carey did not involve an intentional tort.

Each of the *Coleman* factors weighs in favor of the conclusion that

these allegations constitute medical malpractice under the LMMA.

*Allegations Re: Development of Decubitus Ulcers*

(1) The allegation regarding implementing interventions to prevent decubitus ulcers concerns the medical care to treat this condition.

(2) Expert medical evidence will be needed to discuss how pressure injuries develop, what steps should be taken to prevent such injuries, and whether CRC's conduct was sufficient.

(3) The determination of a patient's status regarding pressure injuries is connected to the assessment of the patient.

(4) Attempts to prevent decubitus ulcers involve activities CRC was licensed to perform.

(5) Plaintiffs' allegations are that CRC fell below the standard of care in this regard—according to plaintiffs, the pressure injuries would not have occurred had Mrs. Carey not sought treatment at CRC. This satisfies the causation element.

(6) There is no allegation of an intentional tort.

*Allegations Re: Nutrition, Hydration, Medication, and Diaper Changes*

As they did with claims related to decubitus ulcers and pressure injuries, Louisiana courts have applied the *Coleman* analysis to claims related to improper hydration, medication, and diaper changes and have found them all to constitute medical malpractice and thus fall under the LMMA.

In the instant case, urges CRC, each of plaintiffs' specific allegations as to CRC consists of medical malpractice. Applying the *Coleman* analysis, each factor weighs in CRC's favor as to each of the allegations made by plaintiffs in their petition. However, urges CRC, even should this Court find that one or more factors weighs in favor of plaintiffs, this does not mean that plaintiffs have met their burden of proof under *Coleman*. All factors must be weighed—any factors that "theoretically" weigh in favor of plaintiffs would be strongly outweighed by the other factors in CRC's favor so as to lead to the conclusion that plaintiffs' claims are medical malpractice under the LMMA.

Finally, CRC urges this Court to find that the trial court correctly denied plaintiffs' request to amend their petition. In this case, the grounds of the exception of prematurity cannot be removed by amendment. According to CRC, even if plaintiffs were given a chance to amend their petition, they could not change the nature of the acts they have alleged to constitute intentional torts.

*Analysis*

La. C.C.P. art. 926 sets forth the objections which may be raised through the dilatory objection, including prematurity. A dilatory exception of prematurity asks whether a cause of action is ripe for judicial determination. *Thomas v. Regional Health Systems of Acadiana, LLC*, 19-00507 (La. 1/29/20), 347 So. 3d 595; *Williamson v. Hospital Service District No. 1 of Jefferson*, 04-0451 (La. 12/1/04), 888 So. 2d 782. The exception of prematurity is the proper procedural mechanism for a qualified healthcare provider to invoke when a medical malpractice plaintiff has failed to submit a claim to the medical review panel before filing suit against the provider. *McDowell v. Garden Court Healthcare, LLC*, 54,645 (La. App. 2 Cir. 8/10/22), 345 So. 3d 506, *writ denied*, 2201364 (La. 11/15/22), 349 So. 3d 999; *White v. Glen Retirement System*, 50,508 (La. App. 2 Cir. 4/27/16), 195 So. 3d 485.

In evaluating an exception of prematurity, a court may look to the evidence offered at the hearing, as well as the allegations of the petition. La. C.C.P. art. 926; *Thomas, supra; Williamson*, *supra*; *LaCoste v. Pendleton Methodist Hospital, L.L.C.*, 07-0008 (La. 9/5/07), 966 So. 2d 519. The party asserting the prematurity exception has the burden of proving it is entitled to a medical review panel because the allegations fall within the LMMA. *Id.* La. C.C.P. art. 933(B) provides:

> When the grounds of the other objections pleaded in the dilatory exception may be removed by amendment of the petition or other action by plaintiff, the judgment sustaining the exception shall order plaintiff to remove them within the delay allowed by the court, and the action, claim, demand, issue or theory subject to the exception shall be dismissed only for a noncompliance with this order.

9

An action against health care providers, which includes nursing homes and long-term care rehabilitation centers such as CRC, is subject to the LMMA.  La. R.S. 40:1231.1, *et* seq.; *Perritt v. Dona*, 02-2601 (La. 7/2/03), 849 So. 2d 56; *Self v. Willis-Knighton Medical Center*, 55,130 (La. App. 2 Cir. 8/9/23), ___ So. 3d ___, 2023 WL 5065300; *Medical Review Panel for Lane v. Nexion Health at Minden, Inc.*, 53,901 (La. App. 2 Cir. 8/11/21), 326 So. 3d 340, *writ denied*, 21-01410 (La. 11/23/21), 328 So. 3d 82.  The LMMA requires that all claims against health care providers arising from medical malpractice be reviewed through a medical review panel before proceeding to any other court.  *Perritt*, 02-2601, p. 7, 849 So. 2d at 61, *citing Everett v. Goldman*, 359 So. 2d 1256 (La. 1978); *Self*, *supra*.  The filtering process is done to pressure either the claimant to abandon a worthless claim or the defendant to settle the case reasonably.  *Perritt*, *supra*; *Self*, *supra*.

The LMMA and its limitations on tort liability for a qualified health care provider apply strictly to claims arising from medical malpractice. *Blevins v. Hamilton Medical Center, Inc.*, 07-127 (La. 6/29/07), 959 So. 2d 440; *Coleman*, *supra*; *Self*, *supra*.  All other tort liability on the part of the qualified health care provider is governed by general tort law.  *Id.*; *McDowell*, *supra*.  A tort suit that is subject to the LMMA filed before the completion of the medical review panel process is subject to dismissal on an exception of prematurity.  *Blevins*, *supra*; *Butler-Bowie v. Olive Branch Senior Care Center*, 52,520 (La. App. 2 Cir. 2/27/19), 266 So. 3d 478.

The LMMA defines "malpractice" as:

[A]ny unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also

10

includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failure of prosthetic devices implanted in or used on or in the person of a patient.

La. R.S. 40:1231.1(A)(13). "Health care" is defined in the LMMA as "any action or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." La. R.S. 40:1231.1(A)(9). Whether a claim sounds in medical malpractice is a question of law reviewed under a *de novo* standard. *Thomas*, 19-00507, p. 8, 347 So. 3d at 601; *Jackson v. Willis Knighton Health System*, 54,405, p. 5 (La. App. 2 Cir. 4/13/22), 337 So. 3d 625, 628; *Matherne v. Jefferson Parish Hospital District No. 1*, 11-1147, p. 4 (La. App. 5 Cir. 5/8/12), 90 So. 3d 534, *writ denied*, 12-1545 (La. 10/12/12), 98 So. 3d 373. The six-factor test for determining whether a claim is medical malpractice under the LMMA is set forth in *Coleman*, *supra*:

(1) whether the particular wrong is 'treatment related' or caused by a dereliction of professional skill;
(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;
(3) whether the pertinent act or omission involved assessment of the patient's condition;
(4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform;
(5) whether the injury would have occurred if the patient had not sought treatment; and
(6) whether the tort alleged was intentional.

In *Richard v. Louisiana Extended Care Centers, Inc.*, 02-0978, p. 12 (La. 1/14/03), 835 So. 2d 460, 468, the Louisiana Supreme Court observed that a "nursing home resident is not always receiving medical care or

11

treatment for any specific condition." Thus, "the legislature did not intend to have every act by any health care provider during the patient's confinement in a nursing home to be covered by the MMA." *Id.* This is evidenced by the explicit exclusion of intentional acts by the legislature.

*Allegations of Intentional Acts*

Paragraphs 22 and 23 of plaintiffs' petition contain the allegations that, prior to oral argument, plaintiffs claimed averred gross negligence. As noted above, however, at oral argument, plaintiffs' counsel abandoned that argument and instead urged that those allegations could be amended to allege intentional torts on the part of CRC. These two paragraphs aver:

22.

It will be shown that defendants, [CRC], knowingly and with full disregard by failing to ensure adequate number of staff per patients, failing to ensure that their staff was adequately trained, failed to adequately hire, train staff appropriately in wound care; represented to have wound care specialty, and yet, failed to provide such specialty care to Mrs. Carey; failed to supervise staff; and failed to allocate sufficient money to obtain and maintain sufficient numbers of competent and knowledgeable personnel/staff to carry out the needs for the patients they accepted; failed to provide basic interventions for infection control, repositioning, bathing, food, water, and medical care as promised and expected; failed to inform the patient's family/responsible party of their inability to care for their patient, Mrs. Carey, or others; failed to ensure adequate number of patient-staff ratio to accommodate the needs of the patients or inform the responsible parties of their inability to provide such care, failed to provide care including those with specialized needs of dementia care, dysphagia care, fall prevention, pressure sore prevention, and specialized care as required by plaintiff herein.

23.

It will be shown that defendants, [CRC], knew or should have known that this pattern of under staffing and inadequate staffing would and did cause harm to plaintiff, Mrs. Anita Carey.

12

As recognized by both the First and Third Circuits, the definition of "intentional tort" as set forth by the Louisiana Supreme Court in *Bazley v. Tortorich*, 397 So. 2d 475 (La. 1981), is applicable in medical malpractice actions. *Garner v. La. Medical Mutual Ins. Co.*, 22-0778, p. 10 (La. App. 1 Cir. 3/29/23), 364 So. 3d 508, 514; *Whitehead*, 21-764, p. 9, 344 So. 3d at 96; *Cudges v. Our Lady of Lourdes Hospital*, 514 So. 2d 195 (La. App. 3 Cir. 1987).

In *Bazley*, *supra* at 480-81, the Supreme Court, for purposes of civil liability, found synonymous the terms "intentional act" and "intentional tort." The Court further defined intent as "that the person either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that that result is substantially certain to follow from his conduct, whatever his desire may be as to that result." In *White v. Monsanto*, 585 So. 2d 1205, 1208 (La. 1991), the Louisiana Supreme Court added, "[I]ntent has reference to the consequences of an act rather than to the act itself. Only where the actor entertained a desire to bring about the consequences that followed or where the actor believed that the result was substantially certain to follow has an act been characterized as intentional."

In *Garner*, *supra*, the plaintiff filed suit against defendant healthcare providers, alleging that he sustained burns to his face during a surgical procedure to remove bilateral shoulder lipomas. Defendants filed an exception of prematurity, which was sustained by the trial court, based upon its finding that Garner's claims were first required to be submitted to a medical review panel. The First Circuit observed:

13

Garner has not averred that any of the health-care-provider defendants consciously desired either the ignition below the drapes by a spark from the Bovie cautery or the burns to Garner's face. And the petition contains no allegations that any of the health-care-provider defendants knew either the ignition below the drapes by the spark from the Bovie cautery or the burns to Garner's face were substantially certain to follow because of any specifically described conduct committed by one of the health-care-provider defendants. Garner has simply averred acts which occurred during a surgical procedure in conjunction with the administration of medical treatment. As such, Garner's petition fails to aver an intentional tort and the provisions of the LMMA apply, including review of his claims and rendition of an opinion by the medical review panel.

*Id.*, p. 10, 364 So. 3d at 514-15.

In the instant case, there is no rational cure for the defects in paragraphs 22 and 23 that would convert the assertions therein from gross negligence to an intentional act. Our examination of the claims stated therein shows that they are all related to an alleged failure to ***provide care***, which is the very essence of the LMMA. As noted by this Court in *Butler-Bowie,* 52,520 at p. 9, 266 So. 3d at 484, although intent need be alleged only generally, something more than a conclusory allegation of intentional conduct is required to state a cause of action in tort. Simply alleging acts that themselves fall squarely within the ambit of the LMMA, then labelling CRC's alleged failure to have adequate staff available to perform said acts as intentional because CRC management intentionally under-or inadequately staffed its facility will not morph the negligent acts or inactions of that staff into intentional acts. *See*, *e.g.*, *Hernandez v. Diversified Healthcare-Abbeville*, *LLC*, 09-546 (La. App. 3 Cir. 11/4/09), 24 So. 3d 284, *writ denied*, 09-2629 (La. 2/12/10), 27 So. 3d 849. Thus, plaintiffs' claims asserted therein are properly before the medical review panel and no amendment will be allowed by this Court.

14

We will now examine plaintiffs' custodial claims to see whether they could be cured by amendment.

*Allegations Re: Consultations and Transfer of Patient*

Consultations with other physicians and the transfer of Mrs. Carey to another facility both fall within the LMMA, as they are treatment related; would require medical expert evidence to determine whether either was necessary; would involve the assessment of her condition to determine whether either was needed and, if so, the particular specialty required for consultation and/or transfer; would occur in the context of a healthcare provider-patient relationship and would involve an activity which CRC was licensed to perform; and, the decision of whether to have a consultation or transfer is not an intentional tort. *See*, *e.g.*, *Benson v. Rapides Healthcare System*, *L.L.C.*, 15-1083 (La. App. 3 Cir. 4/6/16), 188 So. 3d 1139, *writ denied*, 16-1144 (La. 10/10/16), 207 So. 3d 404; *Perkins v. Guidry*, 15-1177 (La. App. 3 Cir. 5/4/16), 191 So. 3d 1182; *Bonilla v. Jefferson Parish Hospital Service District #2*, 16-0234 (La. App. 1 Cir. 12/28/10), 210 So. 3d 540, *writ denied*, *writ denied*, 17-0187 (La. 4/7/17), 215 So. 3d 235. These allegations belong before the medical review panel.

*Allegations Re: Development of Decubitus Ulcers*

A decubitus ulcer that forms as a result of improper care in a health care setting is actionable as malpractice. *Miller ex rel. Miller v. Nursing Homes Mgmt*, *Inc.*, 38,198 (La. App. 2 Cir. 3/5/04), 867 So. 2d 1000, 1004; *Ladart v. Harahan Living Center*, *Inc.*, 13-923, pp. 7-8 (La. App. 5 Cir. 5/14/14), 142 So. 3d 103, 108. *See also*, *Butler-Bowie*, 52,520 at p. 9, 266 So. 3d at 484. This is because expert testimony is required to establish the connection between the failure of the nursing staff to provide certain

equipment and/or care and the development of decubitus or pressure ulcers in light of the patient's medical history or condition would be beyond the province of a layperson to assess. *Ladart*, 13-293 at p. 9, 142 So. 3d at 108; *Guardia v. Lakeview Regional Medical Center*, 08-1639, pp. 6-7 (La. App. 1 Cir. 5/8/09), 13 So. 3d 625, 630. These claims are properly before the medical review panel.

*Allegations Re: Nutrition, Hydration, Medication, and Diaper Changes*

Obviously, any claim related to medication will fall within the purview of the LMMA as treatment related and therefore will be considered first by the medical review panel. Regarding plaintiffs' claims of inadequate care as to nutrition we observe that not all such claims will arise pursuant to a treatment plan or under a physician's orders, e.g., such as for a patient with a restricted diet due a diagnosis of colitis or diabetes. Likewise, failure to properly hydrate residents also may arise outside of a treatment plan. If plaintiffs can amend their petition to assert such claims, those would sound in tort and not be required to first be presented to a medical review panel. *See*, *Mineo v. Underwriters at Lloyds*, *London*, 07-0514, pp. 8-9 (La. App. 4 Cir. 10/22/08), 997 So. 2d 187, 193-94.

Regarding claims of negligent diapering and damages derived therefrom, as this Court recognized in *Wendling v Riverview Care Center*, *LLC*, 54,958 (La. App. 2 Cir. 4/5/23), 361 So. 3d 557, relying on *Randall v. Concordia Nursing Home*, 07-101 (La. App. 3 Cir. 8/22/07), 965 So. 2d 559, *writ denied*, 07-2153 (La. 1/7/08), 973 So. 2d 726, and *Davis v. St. Francisville Country Manor*, *LLC*, 05-0072 (La. App. 1 Cir. 2/10/06), 928 So. 2d 549, *writs denied*, 06-0604 (La. 5/26/06), 930 So. 2d 25, 07-0481 (La. 4/27/07), 955 So. 2d 699, there can be a claim for dignity-type or tort

16

damages arising from negligent diapering under La. C.C. art. 2315 that may be sought without first being submitted to the medical review panel, notwithstanding the fact that they may share a factual basis with some of the treatment-related claims. *Wendling*, 54,958 at pp. 25-26, 361 So. 3d at 569. Plaintiffs will be given a chance to amend their petitions to make such allegations, if they can do so.

## CONCLUSION

For the reasons set forth above, the judgment of the trial court granting the dilatory exception of prematurity is amended in part to order plaintiffs, if they can, to cure their petition by removing the objections raised by defendants as to the custodial claims asserted therein. The judgment is affirmed as to all other claims, which are properly before the medical review panel.

**AMENDED IN PART, AND AS AMENDED, AFFIRMED.**