966 So.2d 45 (2007)
SOUTHERN SILICA OF LOUISIANA, INC. and Mid State Sand and Gravel Company, L.L.C.
v.
LOUISIANA INSURANCE GUARANTY ASSOCIATION.
No. 2006 CA 2023.
Court of Appeal of Louisiana, First Circuit.
July 13, 2007.
Concurring Opinion October 24, 2007.
*49 Randal J. Robert, Richard Zimmerman, Jr., Baton Rouge, Counsel for Plaintiffs/Appellants, Southern Silica of Louisiana, Inc., et al.
Raymond Jackson, Lafayette, Counsel for Defendant/Appellee, Louisiana Insurance Guaranty Association (LIGA).
Before: CARTER, C.J., WHIPPLE, and McDONALD, JJ.
Concurring Opinion of Justice McDonald, October 24, 2007.
WHIPPLE, J.
This is an appeal by plaintiffs, Southern Silica of Louisiana, Inc. and Mid State Sand and Gravel Company, LLC, from an adverse grant of summary judgment in plaintiffs' suit for declaratory judgment in which plaintiffs sought a judicial determination to resolve whether the 2004 amendments to LSA-R.S. 22:1386 (Louisiana Insurance Guaranty Association's non-duplication of recovery statute) applied to plaintiffs' accrued and pending claims retroactively. For the following reasons, we reverse, render, and remand the matter for further proceedings.

FACTS AND PROCEDURAL HISTORY
This appeal arises from a suit for declaratory judgment filed by Southern Silica of Louisiana and Mid State Sand and Gravel Company (hereinafter collectively referred to as "Southern Silica" or "appellants") on February 1, 2004, seeking a declaration that the Louisiana Insurance Guaranty Association (hereinafter referred to as "LIGA") owes appellants indemnity and defense in approximately 500 silicosis suits filed against them in Louisiana, Texas, and Mississippi. Southern Silica was in the business of mining and selling sand products, and Mid State Sand and Gravel Company was in the business of mining and producing sand and gravel products from 1964 to 2003. The plaintiffs in the silicosis suits claim they were exposed to silica dust over long periods of time, with some exposure dates ranging from 1965 to 2003.
During the years 1977 through 1982, Southern Silica was insured by Reliance Insurance Company (hereinafter referred to as "Reliance") under a number of commercial general liability and excess/umbrella liability policies. In May of 2001, Reliance was placed in rehabilitation by the Pennsylvania Department of Insurance. Because Reliance was unable to generate sufficient cash flow to pay claims, the Pennsylvania Department of Insurance subsequently sought a final order of liquidation. On October 3, 2001, the Commonwealth Court of Pennsylvania declared Reliance insolvent and ordered its liquidation. The insurance commissioner of the State of Pennsylvania was appointed statutory liquidator and was ordered to take possession of Reliance's property and to liquidate its assets.
The Reliance policies at issue provided coverage to Southern Silica for the damages alleged in the suits for the relevant time period. However, since Reliance has *50 been declared insolvent and ordered liquidated, Southern Silica has no insurance coverage for the years of 1977 through 1982. Specifically, Southern Silica alleged (and the parties do not dispute) in their petition for declaratory judgment that although appellants have insurance coverage for some of the exposure years identified in the 500 suits against them, they have absolutely no other available insurance coverage, either primary or excess, for the years covered by the Reliance policies. Further, according to Southern Silica, some of the suits have been settled and Southern Silica has been obliged to pay the silicosis plaintiffs out of company funds due to the lack of insurance coverage for the pertinent time period. Thus, Southern Silica filed the instant suit for declaratory judgment, seeking a judicial decree that LIGA was statutorily obligated: (1) to provide them with a defense and indemnity for those years in the pending suits and (2) to indemnify Southern Silica for payment of the prior settled claims.
On March 26, 2004, LIGA filed a dilatory exception of prematurity and answer to the petition asserting "all affirmative defenses" available to LIGA pursuant to LSA-R.S. 22:1375, et seq.
On September 14, 2004, Southern Silica filed a motion for summary judgment contending that as a matter of law, they were entitled to a judgment declaring that the policies in question are the type covered by LSA-R.S. 22:1377 and that the lawsuits are "covered claims" as defined by LSA-R.S. 22:1379(3)(a). As such, Southern Silica contended, LIGA has a statutory obligation and duty to provide Southern Silica with a defense and/or indemnity for the exposure claims allegedly occurring during the period of 1977-1982.
On November 10, 2004, Southern Silica amended its petition for declaratory judgment, alleging that LSA-R.S. 22:1386(A), the non-duplication of recovery statute, had been amended by Act No. 108 of the 2004 Regular Session, effective August 15, 2004, and that retroactive application of the statute, as amended, to any causes of action against LIGA for covered claims, accrued or pending prior to August 15, 2004 would deprive Southern Silica of vested rights in contravention of the Due Process and/or Contract Clauses of the state and federal constitutions.
On December 3, 2004, LIGA re-urged its exception of prematurity and answered Southern Silica's amended petition, contending that pursuant to LSA-R.S. 22:1386, Southern Silica was obligated to first seek defense and indemnity from their solvent insurers for the years in which Reliance provided coverage, and that until such defense was sought against the other solvent insurers who provided coverage to Southern Silica, any suit against LIGA would be premature.
By judgment dated January 6, 2005, the trial court denied Southern Silica's motion for summary judgment, finding as follows:
1. Act 108 of the 2004 Regular Legislative Session legislatively overruled the Louisiana Supreme Court's decision in Hall v. Zen-Noh Grain Corporation, XXXX-XXXX (La.4/27/01), 787 So.2d 280.
2. Act 108 of the 2004 Regular Legislative Session requires that all other insurance for all other periods must be exhausted before the insured can claim LIGA coverage.
3. Accordingly, Southern Silica's other solvent insurers must indemnify and defend it for the periods of time that they provided coverage and must also indemnify and defend for the period covered by any insolvent insurers.

*51 4. Act 108 of the 2004 Regular Legislative Session does not divest Southern Silica of any rights and is not unconstitutional.
After this judgment was rendered, Southern Silica filed an application for supervisory writs with this court. On June 17, 2005, another panel of this court denied the writ, stating as follows:
The judgment issued by the trial court did more than simply determine whether or not there was a genuine issue of material fact that precluded summary judgment. All of the issues raised in the Petition for Declaratory Judgment have apparently been ruled on by the trial court as indicated in the oral reasons for judgment submitted with the writ application. Therefore, this Court declines to exercise its supervisory jurisdiction in regard to this matter. Once a judgment on the merits of the Petition for Declaratory Judgment is rendered, it will be an appealable judgment.
Southern Silica of Louisiana v. LIGA, XXXX-XXXX (La.App. 1st Cir.6/17/05) (unpublished writ action).[1]
On March 13, 2006, LIGA filed a motion for summary judgment contending that, pursuant to the 2004 amendments to LSA-R.S. 22:1386(A), Southern Silica must first exhaust any and all other insurance available for any policy period for which insurance is available before recovering from LIGA, even if an insolvent insurer (Reliance) provided the only coverage for a certain period of the alleged exposure. LIGA further contended that "Southern Silica's other solvent insurers must first absorb Reliance's share of defense and indemnity to the extent of their policies."
The matter was argued before the trial court on May 15, 2006. At the conclusion of the hearing, the trial court granted LIGA's motion for summary judgment, stating as follows:
This court finds that the recent amendment to La[.] R.S. 22:1386 requires the other insurance companies to fill in the gap left by the insolvency of Reliance. This court further finds this amendment applies retroactively because it is procedural in nature. Southern Silica did not have a vested right to have Louisiana Insurance Guaranty Association provide a defense to it; therefore, there is no genuine issue of material fact that Louisiana Insurance Guaranty Association is not required to provide a defense to Southern Silica.
A written judgment dismissing Southern Silica's claims with prejudice was signed on June 19, 2006. The judgment further provided "that SOUTHERN SILICA OF LOUISIANA, INC. and MID STATE SAND AND GRAVEL COMPANY, LLC shall not be prevented from claiming defense and indemnity from LIGA but only after all other insurance coverage available to SOUTHERN SILICA OF LOUISIANA, INC. and MID STATE SAND AND GRAVEL COMPANY, LLC for any and all coverage periods has been fully exhausted and after satisfying all other requirements of the LIGA statute."
Southern Silica appeals, contending that the trial court erred: (1) in failing to apply the law in effect at the time that Southern Silica's cause of action accrued, namely the Louisiana Supreme Court's holding in Hall v. Zen-Noh Grain Corporation, XXXX-XXXX (La.4/27/01), 787 So.2d 280 (per curiam); and (2) in retroactively applying the amendment to LSA-R.S. 22:1386(A). Thus, Southern Silica requests that this court render judgment in its favor.

*52 DISCUSSION
Summary judgments are reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750. A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Granda v. State Farm Mutual Insurance Company, 2004-2012 (La.App. 1st Cir 2/10/06), 935 So.2d 698, 701. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966(A)(2); Rambo v. Walker, 96-2538 (La.App. 1st Cir.11/7/97), 704 So.2d 30, 32. The motion should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
The initial burden of proof is on the moving party. However, on issues for which the moving party will not bear the burden of proof at trial, the moving party's burden of proof on the motion is satisfied by pointing out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the nonmoving party must produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial; failure to do so shows that there is no genuine issue of material fact. LSA-C.C.P. art. 966(C)(2). Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Revere v. Dolgencorp, Inc., XXXX-XXXX (La.App. 1st Cir.9/23/05), 923 So.2d 101, 104.
A declaratory judgment action is designed to provide a means for adjudication of rights and obligations in cases involving an actual controversy that has not reached the stage where either party can seek a coercive remedy. Chauvin v. Wellcheck, Inc., XXXX-XXXX (La.App. 1st Cir.6/9/06), 938 So.2d 114, 116. The function of a declaratory judgment is simply to establish the rights of the parties or express the opinion of the court on a question of law without ordering anything to be done. ANR Pipeline Company v. Louisiana Tax Commission, 2001-2594, 2001-2600 (La.App. 1st Cir.3/20/02), 815 So.2d 178, 185, affirmed and remanded, XXXX-XXXX (La.7/02/03), 851 So.2d 1145.
However, our jurisprudence has limited the availability of declaratory judgment by holding that "courts will only act in cases of a present, justiciable controversy and will not render merely advisory opinions." Church Point Wholesale Beverage Company, Inc. v. Tarver, 614 So.2d 697, 701 (La.1993). As the party seeking summary judgment, LIGA was required to establish that under the undisputed facts, it was entitled to judgment in its favor as a matter of law dismissing Southern Silica's petition, as Southern Silica could not meet the burden of proving entitlement to a declaratory judgment. Specifically, LIGA was required to establish that Southern Silica could not show that LIGA was obligated, due to Reliance's insolvency, to defend and indemnify them in the suits alleging damages for exposure allegedly occurring during the gap in coverage.
Prior to its amendment in 2004, Louisiana Revised Statute 22:1386, entitled, "Nonduplication of recovery," provided in part, as follows:

*53 A. Any person having a claim against an insurer under any provision in an insurance policy, other than a policy of an insolvent insurer which is also a covered claim, shall be required first to exhaust his rights under such policy. Such other policies of insurance shall include but shall not be limited to liability coverage, uninsured or underinsured motorist liability coverage, or both, hospitalization, coverage under self-insurance certificates, coverage under a health maintenance organization or plan, preferred provider organization or plan, or similar plan, and any and all other medical expense coverage. All entities that are prohibited from recovering against the association, as specified in R.S. 22:1379(3)(b), shall also be considered insurers for purposes of this Subsection. As to the association, any amount payable by such other insurance shall act as a credit against the damages of the claimant, and the association shall not be liable for such portion of the damages of the claimant.
Southern Silica contends that the trial court should have applied this version of the statute, which was the law in effect at the time the claims against Southern Silica accrued and at the time the claims were asserted, relying upon the Supreme Court's holding in Hall v. Zen-Noh Grain Corporation, XXXX-XXXX (La.4/27/01), 787 So.2d 280 (per curiam). In Hall, plaintiff filed a toxic tort suit against the Zen-Noh Grain Corporation seeking damages for injuries allegedly caused by the actions and operations of Zen-Noh from 1975 forward. Hall, 787 So.2d at 281. Zen-Noh filed a third-party demand against LIGA due to the insolvency of Zen-Noh's primary insurer, The North West Insurance Company, and its excess carrier, Transit Casualty Company. Hall, 787 So.2d at 281. LIGA subsequently filed an exception of no cause of action, contending that the third-party demand failed to allege that Zen-Noh had exhausted all applicable policies prior to proceeding against LIGA, as required by LSA-R.S. 22:1386. Hall, 787 So.2d at 281.
In response, Zen-Noh filed a supplemental and amending third-party demand asserting that Transit Casualty's policies were issued for the period of July 7, 1982 through July 7, 1984, and that for that two-year period, Zen-Noh did not have a claim against an insurer under any provision in any insurance policy in effect during that period other than the policies issued by the two insolvent carriers. Hall, 787 So.2d at 281. The Supreme Court reversed the judgment of the appellate court, which had affirmed the judgment of the trial court and maintained LIGA's exception, stating as follows:
Zen-Noh clearly alleged in its third-party demand that it does not have a claim against an insurer (other than the insolvent insurers) under any provision in an insurance policy in effect during the relevant time period, July 7, 1982 through July 7, 1984. Therefore, on its face, Zen-Noh's petition satisfies the requirement under La. R.S. 22:1386 that it exhaust its rights under solvent insurance policies prior to proceeding against LIGA.
We recognize that Zen-Noh has filed third-party demands against other insurers, Old Republic and Lexington. LIGA maintains that the existence of Zen-Noh's claims against these solvent insurers establishes on the face of the pleadings that Zen-Noh has not exhausted its rights as required by La. R.S. 22:1386. However, a review of Zen-Noh's third-party demands in these matters reveals that the applicable policy periods are outside of the July 7, 1982 through July 7, 1984 time frame for which Zen-Noh seeks coverage from LIGA. Nothing in these pleadings contradicts *54 Zen-Noh's allegation that it does not have a claim against an insurer under any provision in any insurance policy in effect during the July 7, 1982 to July 7, 1984 period.
Hall, 787 So.2d at 281-282.
On appeal, Southern Silica contends that here, as in the Hall case, there is no other insurance available for the Reliance policy years. Thus, they contend, pursuant to Hall, LIGA is statutorily obligated to provide defense and indemnity to Southern Silica for the Reliance policy years and the trial court erred as a matter of law in declaring otherwise.
By Acts 2004, No. 108, § 1, which became effective on August 15, 2004, LSA-R.S. 22:1386 was amended to include the following additional language:
In the case of a claimant alleging personal injury or death caused by exposure to asbestos fibers or other claim resulting from exposure to, release of, or contamination from any environmental pollutant or contaminant, such claimant must first exhaust any and all other insurance available to the insured for said claim for any policy period for which insurance is available before recovering from the association, even if an insolvent insurer provided the only coverage for one or more policy periods of the alleged exposure.
(Emphasis added.)
Section 3 of Act 108 further provides that "[t]his Act shall apply to all covered claims, as defined in R.S. 22:1379, pending or arising after the effective date of the Act."
Thus, Southern Silica contends on appeal that the issue is whether the above amendment to LSA-R.S. 22:1386(A), which became effective August 15, 2004, can be lawfully applied herein to retroactively divest Southern Silica of rights to defense and indemnity accrued and asserted in February of 2004, prior to the effective date of said amendment.
It is well-settled that the legislature is free, within constitutional confines, to give its enactments retroactive effect, Davis v. St. Francisville Country Manor, L.L.C., XXXX-XXXX (La.App. 1st Cir.2/10/06), 928 So.2d 549, 554, writ denied, XXXX-XXXX (La.5/26/06), 930 So.2d 25, and a court generally must defer to the legislature's intent when determining whether a statute should be applied retroactively. LSA-C.C. art. 6; Wooley v. Amcare Health Plans of Louisiana, Inc., 2005-2025 (La.App. 1st Cir.10/25/06), 944 So.2d 668, 672. In determining whether a law may be applied retroactively, courts are guided by LSA-C.C. art. 6, which provides that "[i]n the absence of contrary legislative expression, substantive laws apply prospectively only" and that "[p]rocedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary." Article 6 requires a two-fold inquiry. First, the court must ascertain whether, in the enactment, the legislature expressed its intent regarding retroactive or prospective application. If the legislature did not express its intent, the court must classify the enactment as substantive, procedural, or interpretive. Davis, 928 So.2d at 554.
In the instant case, the language of Act 108 specifically states in Section 3 of the Act that the Act shall apply to all covered claims, as defined in R.S. 22:1379, "pending on or arising after" the effective date of the Act. However, our inquiry does not end there. Instead, we note that even where the legislature has expressed its intent to give a law retroactive effect, the law may not be applied retroactively if doing so would impair contractual obligations *55 or disturb vested rights in violation of the Contract and Due Process Clauses of the Federal and State Constitutions. U.S. Const. art. I, § 10; U.S. Const. amend. XIV, § 1; La. Const. art. I, § § 2, 23; Davis, 928 So.2d at 554-555. If it does so, then in spite of legislative pronouncements to the contrary, the law is substantive, rather than procedural or interpretative. State Farm Mutual Automobile Insurance Company v. Noyes, XXXX-XXXX (La.App. 1st Cir.2/23/04), 872 So.2d 1133, 1138.
In granting LIGA's motion for summary judgment, the trial court found that Southern Silica did not have a vested right to have LIGA provide a defense. Thus, the trial court determined, the amendment was merely procedural in nature and was to be given retroactive effect. Applying the statute, as amended, the trial court determined that LSA-R.S. 22:1386 required that other solvent insurers were now statutorily obligated to "fill the gap" left by the insolvency of Reliance. Thus, the court granted LIGA's motion for summary judgment, thereby relieving LIGA of its obligation to defend and indemnify Southern Silica for the claims related to the Reliance policy years.
Southern Silica, however, contends that the trial court's application of the amendment effects a substantive change in that Southern Silica's rights to indemnity and defense in the various prior accrued and pending causes of action against LIGA are vested rights protected by the guarantee of the Due Process Clauses of the Federal and State Constitutions. Specifically, Southern Silica notes that the proper documentation supporting the request for defense and indemnification of these claims had been submitted to LIGA, in accordance with the applicable statutory requirements, prior to the enactment of the amended statute. However, LIGA steadfastly refused to pay or indemnify these covered claims, eventually relying upon the amended statute as justification for its actions. Southern Silica contends that if the amended statute overruled Hall, as determined by the trial court, then the amendment is clearly substantive in nature, and is not procedural. Southern Silica further asserts that "the harsh reality is that Southern Silica has over 500 claims pending against it and it has no coverage for the Reliance policy years," in that with respect to cases that have already been settled, Southern Silica has been required to personally pay the portion of settlements relating to the Reliance policy years, and that unless LIGA is required to comply with its statutory duty, Southern Silica's assets will continually deplete given the coverage gap created by Reliance's insolvency.[2] Although LIGA argues that the amended statute is procedural in that it merely prescribes the priority or order in which insureds are entitled to defense and indemnity from their insurers, and not their right to recover, Southern Silica counters that the question is not one of priority, but, rather, whether Southern Silica will have any coverage for the Reliance policy years (1977-1982) while it attempts to defend against over 500 lawsuits filed against them for damages incurred during that period. Southern Silica contends that, if applied retroactively, the amended statute will divest Southern Silica of valid rights and causes of action against LIGA, which had accrued and vested (and *56 were already asserted) prior to the enactment of the statute. We agree.
A substantive law is one that creates an obligation and its acts are generally defined as those which create, confer, define or destroy rights, liabilities, causes of action or legal duties. Gauthreaux v. Trosclair, 95-0549 (La.App. 1st Cir.6/28/96), 676 So.2d 213, 217. Procedural laws, on the other hand, prescribe methods for enforcing, processing, administering, or determining rights, liabilities, or status. Davis, 928 So.2d at 555. If a statute merely prescribes the method of enforcing a right, which previously existed or maintains redress for invasion of rights, it is classified as procedural. If it creates a new obligation where none previously existed, it is a substantive law. American Waste and Pollution Control Company v. State, Department of Environmental Quality, 597 So.2d 1125, 1128 (La.App. 1st Cir.), writs denied, 604 So.2d 1309, 1318 (La.1992). However, even if a law is characterized as procedural, it may not be applied retroactively if its language evidences a contrary intent, or if the retroactivity would operate to disturb vested rights. Graham v. Sequoya Corporation, 478 So.2d 1223, 1225-1226 (La.1985). Furthermore, if a statute that is procedural or remedial also has the effect of making a change in the substantive law, it will be construed to operate prospectively only. Thomassie v. Savoie, 581 So.2d 1031, 1034 (La.App. 1st Cir.), writ denied, 589 So.2d 493 (La.1991).
The amendments to LSA-R.S. 22:1386 would seemingly require any plaintiff asserting a claim to go through the formalities of exhausting any and all other insurance available to Southern Silica for exposure claims for any policy period for which insurance is available before recovering from LIGA, even if the insolvent insurer, i.e., Reliance, provided the only coverage for one or more policy periods of the alleged exposure. Thus, for any claims alleging exposure from 1977 through 1982, those solvent insurers providing coverage to Southern Silica for other policy periods would be required under the amended version of the statute to provide coverage for the policy periods of the insolvent insurer, and the plaintiff may not proceed against LIGA until all solvent insurers' policies are exhausted.
This amendment undoubtedly creates a new obligation or liability vis-a-vis Southern Silica's solvent insurers by requiring that they provide coverage and pay claims for periods of alleged exposure for Reliance policy years when they had no contractual obligation or statutory duty to provide coverage. Thus, the amendments clearly effect a substantive change in the law with regard to payment of claims. See American Waste and Pollution Control Company, 597 So.2d at 1128.
In Segura v. Frank, 93-1271, 93-1401 (La.1/14/94), 630 So.2d 714, cert. denied sub nom, 511 U.S. 1142, 114 S.Ct. 2165, 128 L.Ed.2d 887 (1994), the Louisiana Supreme Court determined that the 1990 amendments to LSA-22:1386 were procedural insofar as their effect on plaintiffs' rights, in that the amendments merely prescribed a method or order of recovery from defendants, but did not affect plaintiffs' rights to recover. Segura, 630 So.2d at 723-724. However, the Court further determined that because the 1990 amendments clearly affected certain insurers' substantive contractual rights, by increasing their obligations to plaintiffs under existing UM policies, the amendments would apply prospectively only because they clearly would affect the insurers' substantive rights under policies issued prior to the amendments' effective date. Segura, 630 So.2d at 723-724. Accordingly, where the legislature expressed *57 no intent that the amendments apply retroactively, the Court determined that because the amendments were substantive, they would apply prospectively only. Segura, 630 So.2d at 725.
We find the facts of the instant case analogous to those in Segura in that while the amendments affect the procedural rights of the plaintiffs, by specifying the method or order of recovery, the amendments clearly effect a change in the substantive rights of Southern Silica's other solvent insurers by increasing their duties and obligations.[3] Accordingly, we find that Acts 2004, No. 108 § 1 clearly enacted a change in existing rights and created new obligations and liabilities where none previously existed, at least with regard to Southern Silica's other solvent insurers. Thus, the amendment must be classified as substantive.
Because, however, the legislature herein expressed legislative intent regarding the retroactive application of the Act, i.e., that the Act shall apply to all covered claims "pending on or arising after" the effective date of the Act, we must now determine whether the amendment impairs contractual obligations or disturbs vested rights such that it may not be applied retroactively with regard to Southern Silica's pending demands against LIGA. In order to do so, we employ the appropriate Contract Clause analysis set forth by the Supreme Court in Energy Reserves Group, Inc. v. Kansas Power & Light Company, 459 U.S. 400, 410, 103 S.Ct. 697, 704, 74 L.Ed.2d 569 (1983) and adopted by the Louisiana Supreme Court in Segura. Segura, 630 So.2d at 728-729; see also State v. All Property and Casualty Ins. Carriers Authorized and Licensed To Do Business In State, 2006-2030 (La.8/25/06), 937 So.2d 313, 324. The standard to be used by reviewing courts is a four-step analysis, as follows: first, the court must determine whether the state law would, in fact, impair a contractual relationship; second, if an impairment is found, the court must determine whether the impairment is of constitutional dimension; third, if the state regulation constitutes a substantial impairment, the court must determine whether a significant and legitimate public purpose justifies the regulation; and finally, if a significant and legitimate public purpose exists, the court must determine whether the adjustment of the rights and responsibilities of the parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption. Segura, 630 So.2d at 729.
First, as we previously determined, the amendment impairs the contractual relationship of Southern Silica and its other solvent insurers by creating and imposing new obligations and liabilities where none had previously existed. Moreover, we note that unlike Segura, where the amendments at issue potentially increased the UM insurers' contractual obligations and liabilities under existing insurance contracts and State, where the pertinent amendments extended a prescriptive period for policy holders to file damage claims against insurers for property damage sustained during Hurricanes Katrina and Rita under existing insurance contracts, the amendment requires that insurance companies provide coverage for claims asserted for exposure during a period of time where the insurance company had no contract in place, effectively creating an obligation for a period of time where no obligation had existed before. Thus, we find that this creation of coverage constitutes an impairment of the contractual relationship between Southern Silica and its liability *58 insurers providing coverage before 1977 and after 1982.
The next inquiry is whether the impairment is of constitutional dimension. This inquiry requires a reviewing court to determine the severity of the impairment. Segura, 630 So.2d at 729. "Minimal alteration of contractual obligations may end the inquiry at its first stage, while severe impairment will push the inquiry to a careful examination of the nature and purpose of the state legislation." Segura, 630 So.2d at 729, citing Allied Structural Steel Company v. Spannaus, 438 U.S. 234, 254, 98 S.Ct. 2716, 2727, 57 L.Ed.2d 727 (1978). Total destruction of contractual expectations is not necessary for a finding of substantial impairment. Segura, 630 So.2d at 729. On the other hand, state regulation that restricts a party to the gains it reasonably expected from the contract does not necessarily constitute a substantial impairment. Segura, 630 So.2d at 729.
In measuring the severity of an impairment of contractual obligations, a reviewing court must first consider the factors that reflect the high value the Framers of the Constitution placed on the protection of private contracts. Contracts enable individuals to order their personal and business affairs according to their particular needs and interests. Segura, 630 So.2d at 729. Once arranged, those rights and obligations are binding under the law, and parties are entitled to rely on them. Segura, 630 So.2d at 729-730. The court must also consider whether the industry the complaining party has entered has been regulated in the past. Segura, 630 So.2d at 730. Thus, where a complaining party enters a contractual relationship in a heavily regulated industry, expectations of further regulation of the industry may lessen the severity of a subsequent impairment of that party's contractual rights and obligations. Segura, 630 So.2d at 730.
In the instant case, the exposure periods alleged by the plaintiffs in the suits and claims against Southern Silica ranged from 1965 to 2003. Due to the insolvency of Reliance, Southern Silica has no liability coverage for exposures and claims related to 1977 to 1982. By applying the amended version retroactively to the 500 or so claims pending, paid, or at issue before the enactment of the change, the statute does more than merely specify a "ranking," in requiring Southern Silica to demand coverage from its other insurers for the Reliance policy years. Notably, although the amendment does not set forth a duty for the insurers to provide such coverage, the amendment would illogically and unreasonably require Southern Silica to seek indemnity against later insurers prior to recovery from LIGA, even where Southern Silica had statutory rights against LIGA pre-dating the amendment. Thus, despite the rights and duties owed by LIGA which had accrued to Southern Silica for the claims pending, asserted or paid before the amendment, retroactive application herein would produce absurd results. For example, although the amendment does not set forth a specific duty for the solvent insurers to provide such coverage, retroactive application of the amendment would require Southern Silica to demand that an insurer providing coverage to Southern Silica in 1965 indemnify and pay claims for alleged exposure in 1982, some eighteen years later. Likewise, Southern Silica would be required to demand in its pending litigation that an insurer later providing liability coverage to Southern Silica, such as in 2003, pay claims for alleged exposure thirty years prior, in 1977.
While we recognize, as the Court did in Segura and State, that the insurance industry is traditionally regulated by state *59 law as a matter of public policy, we find that requiring Southern Silica to demand that an insurer "step up" and provide liability coverage for a gap created by an insolvent insurer for up to thirty years from the time that the policy contracted for by the insurer was in effect and premiums had been paid for that policy, constitutes severe constitutional impairment of rights that had been statutorily granted to Southern Silica prior to the amendment. Cf. Segura, 630 So.2d at 730-731 and State, 937 So.2d at 324-325, where the Court found the impairments to be of constitutional dimension where pertinent policies were in effect at the time the underlying claims were asserted and where the policy coverage period in effect was extended for one year to provide coverage while the insured continued to pay premiums to the insurer.
The third inquiry is whether a significant and legitimate public purpose justifies the regulation. The public purpose requirement is primarily designed to prevent a state from embarking on a policy motivated by a simple desire to escape its financial obligations or to injure others through the repudiation of debts or the destruction of contracts or the denial of means to enforce them. Segura, 630 So.2d at 731. Hence, we must determine whether a significant and legitimate public purpose justifies retroactive application of Act 108.
Predictably, LIGA contends that it does not have the funds to pay these claims, and that even if Southern Silica's contractual obligations were impaired by Act 108, there is a legitimate public policy interest in maintaining the maximum funds available to LIGA for the payment of claims, which justifies the regulation. Notably, LIGA acknowledges that the Act presents an "imperfect remedy" and "may unfairly burden viable insurers with debts of insolvent ones." However, LIGA argues that as a matter of public policy, the Act should be applied retroactively to ensure that LIGA maintains its "position as an entity of last resort."
Southern Silica contends that the amended statute, if applied retroactively, will divest Southern Silica of its accrued and vested cause of action and will significantly impair its private contractual relationships with its liability insurers providing coverage to it before 1977 and after 1982. Moreover, as noted by Southern Silica, "LIGA's promise that it will assume its statutory obligations once Southern Silica has exhausted all other insurance (which insurance does not even provide coverage for the Reliance years) is of little conciliation if Southern Silica is forced into bankruptcy defending and settling the over 500 lawsuits which are currently pending against it."
Act 108 requires a claimant alleging personal injury or death caused by exposure to "first exhaust any and all other insurance available to the insured for said claim for any policy period for which insurance is available before recovering from [LIGA], even if an insolvent insurer provided the only coverage for one or more policy periods of the alleged exposure." As noted above, LIGA argues that by requiring claimants or policyholders to exhaust any insurance available, even if the coverage was for a period of time where claimant was not exposed, before proceeding against LIGA, the Act serves to minimize the unnecessary depletion of LIGA's funds while at the same time furthering LIGA's stated purpose of avoiding "financial loss to claimants or policyholders because of the insolvency of an insurer." LSA-R.S. 22:1376. Thus, retroactive application would seemingly constitute a legitimate exercise of the state's police power for the purpose of protecting the state's *60 citizens from economic harm to the extent that any LIGA funds would potentially be used. See Segura, 630 So.2d at 731-732. Indeed, the protection of LIGA funds is a significant and legitimate public purpose, which we are bound to consider.
Nonetheless, although we find a significant and legitimate public purpose supports the legislation, the final inquiry requires us to determine whether this adjustment of the rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption. Segura, 630 So.2d at 732. Unless the state itself is a contracting party, as is customary in reviewing economic and social regulation, courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure. Segura, 630 So.2d at 732. However, even when the law addresses a legitimate end, it may not be used to burden a politically defenseless or easy target group with the imposition of costs without fair attention to its interests. Segura, 630 So.2d at 732.
In the instant case, the contractual relationships at issue involve both public and private entities. The private contractual relationships impaired are between Southern Silica and those solvent insurers who provided liability coverage to Southern Silica over the course of a thirty-eight year time span, from 1965 to 2003. Accordingly, in balancing Southern Silica's and LIGA's competing interests, as set forth above, in examining the necessity and reasonableness of applying Act 108 retroactively, we recognize that the legislature's judgment is entitled to proper deference. However, by retroactive application of Act 108, the legislature impaired the private contractual rights of Southern Silica and it insurers by requiring Southern Silica to now assert such claims against their solvent insurers, who could have provided insurance up to thirty years from the date of the alleged exposure for a brief period of time, and to demand coverage for claims for a period where insurers had no contract in effect and did not receive premiums during this period. Unlike the instant case, in both Segura and State, the insurers collected a premium for the pertinent policies, which were in effect at all pertinent times. Thus, by virtue of the coverage provided through the policies in effect at the time, those insurers were already subject to some risk.
In addition to the improper financial burden that would be placed on Southern Silica's solvent insurers in responding to such demands, we find no reasonable purpose would be served in expecting Southern Silica's solvent insurers to cover such claims, when they had no policy in effect and were not bound by a contractual relationship at the time the claim arose, or in requiring Southern Silica to seek indemnity, payment or defense from subsequent insurers for claims arising, asserted, or related to time periods occurring years before or after these contracts were in effect, and which clearly were not contemplated by the written terms of such contracts.
Moreover, we find retroactive application of Act 108 would deprive Southern Silica of vested property rights acquired, asserted, and accrued as well as duties owed by LIGA prior to the passage of this subsequent legislation. When a party acquires a right to assert a cause of action prior to a change in the law, that right is a vested property right which is protected by the guarantee of due process. Bourgeois v. A.P. Green Industries, Inc., XXXX-XXXX (La.4/3/01), 783 So.2d 1251, 1259. Thus, a cause of action, once accused, *61 cannot be divested by subsequent legislation. Bourgeois, 783 So.2d at 1259.[4]
For the above stated reasons, while mindful of the deference due legislative pronouncements on such matters, we are unable to find that the contractual impairments herein are based on reasonable conditions and are of a character appropriate to the public purpose justifying the legislature's adoption. Accordingly, applying the Contract Clause standard, we conclude that retroactive application of Act 108 would violate the federal and state constitutional prohibitions against impairment of contractual obligations.
Thus, we are compelled to find that although the legislature expressed its intent that the amendment be applied to all covered claims "pending or arising after the effective date of the Act," because the law impairs contractual obligations, the law may not be applied retroactively herein. See U.S. Const. art. I, § 10; U.S. Const. amend. XIV, § 1; La. Const. art. I, § § 2, 23; Segura, 630 So.2d at 721-725; Davis, 928 So.2d at 554-555.

CONCLUSION
Accordingly, the June 19, 2006 judgment of the trial court finding that LIGA was entitled to a judgment in its favor as a matter of law and granting LIGA's motion for summary judgment is reversed. Judgment is hereby rendered declaring that the provisions of the Act do not apply retroactively in the instant case. This matter is remanded to the trial court for any further proceedings that may be warranted consistent with the views expressed herein. Costs of this appeal in the amount of $3,939.50 are assessed to the defendant/appellee, the Louisiana Insurance Guaranty Association.
REVERSED, RENDERED, AND REMANDED.
McDONALD, J., concurs and assigns reasons.
McDONALD, J., concurring.
While I concur with the majority's ruling, I write separately to clarify the analysis of the competing constitutional interests in this case.
First, as the majority correctly notes, once the legislature has declared an Act to apply retroactively (or as in this case to "pending" claims) the question of the law's substantive or procedural effect, otherwise necessary to determine its temporal application, becomes moot. Segura v. Frank, 630 So.2d 714, 721 (La.1994). If, however, the new law would disturb vested rights or impair contractual obligations, it cannot be applied retroactively regardless of the legislative declaration. Id. These interests are distinct and must be weighed separately before the legislative amendment to R.S. 22:1386(A) may be retroactively applied.
*62 IMPAIRMENT OF CONTRACTUAL OBLIGATIONS
I disagree that the amended statute impairs contractual obligations. The majority reaches the wrong conclusion partly based on the effective arguments made by Southern Silica. The amended statute is intended to encompass long-term exposure situations. These are distinguishable from normal ordinary torts or a single exposure mass tort. Since exposure generally covers long periods of time, any insurer who provided insurance coverage during any particular exposure period would share the liability with insurers who provided insurance for other exposure periods. Each would the assessed a pro rata share of the exposure depending on the total time period of exposure and the amount of this time the insurer provided coverage. Thus, the majority's position is incorrect that Southern Silica has no insurance coverage for the years 1977 through 1982. True, they have no coverage from the insolvent insurer, Reliance. However, they still have coverage for this time period from the other insurers who provided previous coverage during earlier periods of exposure.
The majority's conclusions would be correct, however, if the only period of exposure was that covered by Reliance (1977-1982). If an employee only worked for Southern Silica during that five years and his exposure only took place during that time frame, then only Reliance would be liable for this exposure. Because of the insolvency of Reliance there would be no other insurance coverage for this period. In this uncommon situation there would be no other insurance to exhaust and LIGA would have to step in immediately.
I disagree with the majority's assertion that "[t]his amendment creates a new obligation or liability vis-á-vis Southern Silica's solvent insurers by requiring that they provide coverage and pay claims for periods of alleged exposure for Reliance policy years when they had no contractual obligation or statutory duty to provide coverage." If this were true, then the legislature has created a contractual obligation. Obviously this cannot happen. In actuality, the solvent insurers are still only obligated for exposure periods during which they provided coverage. The crux of the analysis should be on "exposure". This amendment applies to long-term exposure situations. If exposure occurred during a portion of the time period that any of these insurers provided coverage, then they have some liability. They will share liability with other insurers who provided coverage during any exposure periods. If exposure occurred during time periods in which an insurer did not provide coverage then they would have no liability. If exposure only occurred between 1977 and 1982 (the Reliance years) then these insurers would have no liability. There being no coverage from anyone but Reliance, all other insurance would have been exhausted and LIGA would have to provide coverage. But, the amended statute provides that the solvent insurers (who share some liability because they provided coverage during some of the exposure years) will now share the liability that would have been covered by Reliance. However, even though they now share the liability that would have been assigned to Reliance, they can only share it up to the amount of their policy limits. Even though they may now have to pay more, they still do not owe more than they contracted to pay.
The majority goes through extensive analysis using the Segura case to determine that the amended act created "a change in existing rights and created new obligations and liabilities where none previously existed, at least with regard to Southern Silica's other solvent insurers." *63 The majority thus classifies the statute as a substantive rather than procedural change in the law. This analysis is unnecessary. It is immaterial whether it is substantive or procedural. The majority correctly points out that the legislature specifically expressed its intent that the statute would be applied retroactively to all claims pending on the effective date of the Act. The Segura court found it necessary to conduct its analysis of the statute to determine whether it was procedural or substantive because the legislature had not expressed its intent in amending the statute. Since the legislature has provided for retroactive application of the amendment in the case before us, there is no need for any further consideration.
Segura provides a four-step analysis:
1. the court must determine whether the state law would, in fact, impair a contractual relationship
2. if an impairment is found, the court must determine whether the impairment is of constitutional dimension
3. if the state regulation constitutes a substantial impairment, the court must determine whether a significant and legitimate public purpose justifies the regulation
4. if a significant and legitimate public purpose exists, the court must determine whether the adjustment of the rights and responsibilities of he contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption Segura at 729
First, the majority finds that "the amendment impairs the contractual relationship of Southern Silica and its solvent insurers by imposing new obligations and liabilities where none had previously existed." The majority classifies this as a creation of coverage that constitutes an impairment of the contractual relationship between Southern Silica and the other insurers. However, there is no impairment of contract. As previously mentioned, there is no increase in coverage. The insurers contracted with Southern Silica to provide liability coverage for any exposure during certain periods of time. Each contract provides for a maximum amount of coverage. This is the most that the insurer will have to pay regardless of what might occur. The amendment does not provide an increase in these limits; in fact, it could not do so. While the insurer may owe more than it would have, it still does not owe any more than the amount it contracted to provide. Even if the amendment did somehow increase the contractual amount that these insurers were obligated to pay, this is an issue to be raised by the insurers, not the insured, Southern Silica. Southern Silica has not been affected by this change. They are still insured by the solvent insurers, who now share the liability previously covered by Reliance. If any claims exceed the policy limits on these insurers, then LIGA steps in to cover the balance. Southern Silica has not had any of its rights impaired. It contracted for and paid for a certain amount of insurance and still has that amount of coverage.
Secondly, even if there is an impairment of a contractual relationship it is not of a constitutional dimension. As previously mentioned, the majority fails to consider the amendment in light of its application to long-term exposure cases. The majority cites as an example that "retroactive application of the amendment would require Southern Silica to demand that an insurer providing coverage to Southern Silica in 1965 to indemnify and pay claims for alleged exposure in 1982, some eighteen years later. Likewise, Southern Silica would be required to demand in its pending litigation that an insurer later providing *64 liability coverage to Southern Silica, such as in 2003, pay claims for alleged exposure thirty years prior, in 1977." This is absolutely incorrect. This is not what the statute provides. In the first instance, the insurer providing coverage in 1965 would incur liability if there was exposure in 1965 that continued for the next 18 years into 1982. Any insurer providing coverage in the ensuing years would also incur liability if there was exposure during their coverage years. As previously discussed, the key element in this analysis is exposure. If there is no exposure during the coverage period, then there is no liability. In the second instance, if there was exposure in 1977, the insurer that covered this period would incur liability. If exposure continued through 2003, then any insurer providing coverage during these years would incur its pro rata share of liability. If there was no exposure during the period in 2003 covered by that insurer there would be no corresponding liability. If there is no exposure, there is no liability on that insurer. But continued exposure would pass through to the later insurers if there was exposure during the periods they cover. Again, however, even though each insurer would incur liability for exposure during the period they provided coverage and now must include the period covered by the insolvent insurer, they are not liable for any amount more than the contractual limits. During any periods covered by Reliance, the solvent insurers will now share the pro rata share of Reliance, but only in addition to their pro rata share for exposure during their coverage years and only up to their policy limits. This actually has no contractual effect on Southern Silica and does not impair any of their rights. If any additional rights are created, it is the insurers that have incurred these obligations, not Southern Silica.
Thirdly, I agree with the majority that a significant and legitimate public purpose is fostered by the amendment. It minimizes the unnecessary depletion of LIGA funds and also compensates for losses that citizens would normally incur due to the insolvency of their insurer.
Fourth, is a determination whether the adjustment of rights and responsibilities of the contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the adoption of the amendment. With all deference to my colleagues, I have already discussed why I do not believe that the private contractual relationship between Southern Silica and the solvent insurers has been impaired. The contracts cover long-term exposure situations. The majority maintains, "Unlike the instant case, in both Segura and State, the insurers collected a premium for the pertinent policies, which were in effect at all pertinent times. Thus, by virtue of the coverage provided through the policies in effect at the time, those insurers were already subject to some risk." The instant case is not unlike Segura and State, it is exactly like them. The insurers calculated the potential risk and collected an appropriate premium to provide coverage up to a certain maximum value. They contracted to provide coverage for anyone exposed during their coverage period. If the exposure occurred during this period, then they incurred liability regardless of what happened in ensuing years. If the employee was continually exposed in following years, then the liability would be shared by the insurers covering those years. By having to cover the years that should have been covered by Reliance, the amount will certainly be greater, but it still cannot exceed the maximum amount of the contract. Simply stated, they contracted to provide insurance coverage up to a certain amount *65 and they are still not liable for any amount greater than that amount.
VESTED RIGHTS
The only compelling argument made by the majority with which I agree is that involving the deprivation of vested rights. Under prior law, Southern Silica would unquestionably be entitled to demand LIGA provide indemnity and defense regarding the years when Reliance maintained their only coverage, without first seeking the same from its other, solvent insurers. It is this right of Southern Silica that would be disturbed should the amendment be retroactively applied. The question that must be answered then is this: Was this right "vested" before the effective date of the statutory amendment? "Once a party's cause of action accrues, it becomes a vested property right that may not constitutionally be divested . . . Under Louisiana law, a cause of action accrues when the party has the right to sue." Cole v. Celotex Corp., 599 So.2d 1058, 1063, n. 15 (La.1992). The majority is correct and once the cause of action has accrued it cannot be divested by subsequent legislation. Bourgeois, 783 So.2d at 1259. Further, I ascribe to the position taken by Justice Lemmon in his concurrence in Bourgeois:
True interpretive legislation occurs when the Legislature, upon realizing that a previously enacted law contains an ambiguity or an error, amends the prior law to correct the ambiguity or error before the law has been judicially interpreted. However, after the judicial branch performs its constitutional function of interpreting a law, and the Legislature disagrees with that interpretation, a new legislative enactment is a substantive change in the law and is not an interpretive law, because the original law as interpreted by the judicial branch, no longer applies.
Bourgeois, 783 So.2d at 1261.
Southern Silica filed suit on February 1, 2004. The amendment to LSA-R.S. 22:1386(A) became effective on August 15, 2004. Obviously, whatever rights Southern Silica had at the time suit was filed were vested rights based on the court's interpretation of the statute in Hall v. Zen-Noh Grain Corporation, 787 So.2d 280 (La.4/27/01). The amendment is clearly a new legislative enactment and takes away rights that were vested in Southern Silica at the time.
REMAND:
While I do not necessarily disagree with the majority's decision to remand this matter to the trial court for further proceedings, I question exactly what these further proceedings might involve. This is a suit for a declaratory judgment. The issue before the trial court and, therefore, before this court is whether the amended statute should be applied retroactively or not. The trial court found that it should have retroactive effect and we have determined that it is to be applied prospectively only. Since this was the only issue before the trial court and it has now been decided
For these reasons I respectfully disagree with the majority's conclusions that this law impairs contractual obligations. However, I find that it does disturb vested rights and, therefore, agree with the majority's decision to reverse the decision of the trial court and render a decision that the provisions of the Act do not apply retroactively. I also believe all issues have now been decided and see no reason to remand the case to the trial court. However, I do not necessarily disagree with the decision to remand.
NOTES
[1] Parro, J., dissented and would have granted the writ application.
[2] In Southern Silica's petition for declaratory judgment, which was filed in February of 2004, Southern Silica contended that they had already settled 34 lawsuits, paying approximately $115,964.00 to settle these claims which were related to exposure periods covered under the Reliance policies.
[3] See Segura, 630 So.2d at 721-725.
[4] See e.g. Faucheaux v. Alton Ochsner Medical Foundation Hospital and Clinic, 470 So.2d 878, 879 (La.1985) ("The statutes enacted after the acquisition of such a vested property right . . . cannot be retroactively applied so as to divest the plaintiff of his vested right in his cause of action because such a retroactive application would contravene the due process guaranties."); Terrebonne v. South Lafourche Tidal Control Levee District, 445 So.2d 1221, 1224 (La.1984) ("This vested right could not be impaired by subsequent legislation. The Legislature simply cannot take away an existing cause of action based upon substantive rights which had clearly been granted by legislation during the preceding session and had become vested on the effective date of the legislation."); Favrot v. Parish of East Baton Rouge, 34 La. Ann. 491 (La.1882) ("[P]laintiff cannot be deprived of his [vested] right by mere legislative action.").